**Exhibit A (State Court Filings)**

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | THIRTEENTH JUDICIAL CIRCUIT |
| COUNTY OF GREENVILLE | ) | |
| | ) | C.A. No. _____ |
| Robark Properties, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **SUMMONS** |
| vs. | ) | |
| | ) | **(Jury Trial Demanded)** |
| Northwestern Mutual Wealth Management Company, Northwestern Long Term Care Insurance Company, Northwestern Mutual Investment Services LLC, John Mitchell and Northwestern Mutual Life Insurance Company, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**TO: DEFENDANTS ABOVE NAMED**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to said Complaint upon the subscriber herein at his office at 55 Beattie Place, Suite 1200, Greenville, SC 29601, within **THIRTY (30) DAYS** from the date of service hereof, exclusive of the day of service; and, if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

By:     /s/ *Ioannis (Ian) G. Conits*
Ioannis (Ian) G. Conits, Esq. (SC Bar No. 102675)
Carter R. Massingill (S.C. Bar No. 101802)
Stephanie G. Besselievre (S.C. Bar No. 105256)
GALLIVAN, WHITE & BOYD, P.A.
P.O. Box 10589
Greenville, SC 29603
(T) (864) 271-5430
iconits@gwblawfirm.com
cmassingill@gwblawfirm.com
sbesselievre@gwblawfirm.com

February 10, 2026                    *Attorneys for Plaintiff Robark Properties, LLC*

1

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS THIRTEENTH JUDICIAL CIRCUIT |
| COUNTY OF GREENVILLE | ) | |
| | ) | C.A. No. _____ |
| Robark Properties, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | **(Jury Trial Demanded)** |
| Northwestern Mutual Wealth Management Company, Northwestern Long Term Care Insurance Company, Northwestern Mutual Investment Services LLC, John Mitchell and Northwestern Mutual Life Insurance Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Robark Properties, LLC ("Robark") complains of Northwestern Mutual Wealth Management Company ("NMWMC"), Northwestern Long Term Care Insurance Company ("NLTC"), Northwestern Mutual Investment Services LLC ("NMIS"), John Mitchell ("Mitchell") and Northwestern Mutual Life Insurance Company ("Northwestern Mutual") (collectively, "Defendants") and alleges as follows.

### NATURE OF ACTION

1.      Robark owns three Northwestern Mutual life insurance policies (collectively, "Policies").

2.      The estimated cash value of the Policies is approximately $800,000 and Defendants have received significant compensation/fees in connection with the Policies.

3.      As explained herein, Defendants have committed significant misconduct that has damaged and harmed Robark.

4.      Through this action, Robark seeks damages and other relief for Defendants' misconduct.

2

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

**PARTIES, JURISDICTION AND VENUE**

5.    Robark is a limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business in Greenville County, South Carolina. Robark's managing member is Ralph L. Falls, III ("Falls"). Falls is a citizen and resident of the State of North Carolina.

6.    Upon information and belief, NMWMC is a Wisconsin corporation with at least one office in Greenville County, South Carolina. NMWMC regularly conducts business in Greenville County, South Carolina.

7.    Upon information and belief, NLTC is a Wisconsin corporation with at least one office in Greenville County, South Carolina. NLTC regularly conducts business in Greenville County, South Carolina.

8.    Upon information and belief, NMIS is a Wisconsin corporation with at least one office in Greenville County, South Carolina. NMIS regularly conducts business in Greenville County, South Carolina.

9.    Upon information and belief, Northwestern Mutual is a Wisconsin corporation with at least one office in Greenville County, South Carolina. Northwestern Mutual regularly conducts business in Greenville County, South Carolina.

10.    NMWMC, NLTC and NMIS are subsidiaries of Northwestern Mutual. NMWMC, NLTC and NMIS are thus collectively referred to herein as "Subsidiary Companies."

11.    Upon information and belief, Mitchell is a citizen and resident of the State of North Carolina. Mitchell is a private wealth advisor affiliated with the Subsidiary Companies.

12.    The marketing name the Subsidiary Companies and Mitchell use to do business is Heirloom Advisors. The Subsidiary Companies and Mitchell are thus collectively referred to

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

herein as "Heirloom Advisors." Heirloom Advisors is Robark's financial advisor/representative concerning the Policies.

13.     This Court has jurisdiction over this matter and personal jurisdiction over the parties hereto.

14.     Venue is proper in Greenville County because (a) the most substantial parts of the acts and/or omissions giving rise to the causes of action herein occurred in Greenville County and/or (b) the loss at issue occurred in Greenville County.

<p align="center">**FACTUAL ALLEGATIONS**</p>

15.     Falls was involved in yearslong litigation in North Carolina concerning his father's estate, which, among other things, concerned Robark and the Policies ("North Carolina Litigation").

16.     On August 4, 2022, during the North Carolina Litigation, Falls served a subpoena via Certified Mail on Heirloom Advisors – not Northwestern Mutual – for documents and information concerning the Policies ("Subpoena"). (*See* **Exhibit 1** attached hereto).

17.     Despite the Subpoena being expressly directed to Heirloom Advisors, *Northwestern Mutual* responded to the Subpoena and represented to Falls that requests concerning the Policies should be directed to Northwestern Mutual.

18.     Given that, among other things, (1) Robark purchased the Policies from Northwestern Mutual, (2) Heirloom Advisors is listed on *Northwestern Mutual*'s website, and (3) Mitchell is listed as Robark's Financial Representative on Northwestern Mutual documents concerning the Policies, Falls justifiably relied on Northwestern Mutual's representation and served the exact same requests on Northwestern Mutual. (*See* **Exhibit 2** attached hereto).

<p align="center">4</p>

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

19. Northwestern Mutual, at no point, conveyed that Heirloom Advisors and Northwestern Mutual were operating in separate arenas for purposes of the specific Subpoena requests made. Northwestern Mutual instead conveyed that they were operating in the same arena.

20. Despite repeated requests, the Subpoena requests were not complied with. The North Carolina Litigation, however, settled in 2022.

21. As part of the settlement of the North Carolina Litigation, Falls became the Managing Member of Robark.

22. Robark owns the Policies.

23. Robark has owned the Policies for nearly fifteen years.

<div align="center">**Robark's First Letter to Northwestern Mutual**</div>

24. In an effort to gain a better understanding of the Policies and their histories, including, but not limited to, the decision(s) made in the years leading up to the aforementioned management change to reduce premium amounts for the Policies (which has ultimately resulted in a significant reduction of the cash value of the Policies), Robark's new management – Falls –again requested the documents and information from Northwestern Mutual.

25. A summary of those requests can be found on page 2 of the letter from Robark's counsel to Northwestern Mutual dated May 23, 2023, which is attached hereto as **Exhibit 3** and incorporated herein ("Robark's First Letter").

26. On June 22, 2023, Northwestern Mutual responded to Robark's First Letter. Northwestern Mutual's response is attached hereto as **Exhibit 4** and incorporated herein ("Northwestern Mutual's Response to Robark's First Letter").

27. Consistent with its prior representations and conduct, Northwestern Mutual, at no point, stated that Robark's First Letter should be directed to Heirloom Advisors or any other entity.

<div align="center">5</div>

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

28.     Northwestern Mutual's Response to Robark's First Letter instead refused and/or failed to produce much of the documents, communications, and information requested by Robark for the following improper reasons: "[w]e must decline to respond to the balance of your requests. Those that remain are not only overbroad and unduly burdensome; they are also vague and ambiguous of what you are requesting." (Ex. 4, p. 3).[1]

29.     Again, there was no mention that Robark's First Letter should be directed to Heirloom Advisors. Worse, Northwestern Mutual emphasized to "direct any future correspondence [concerning the requests] to [Northwestern Mutual]." (Ex. 4, p. 4).

30.     Moreover, part of the information Northwestern Mutual's Response to Robark's First Letter did provide concerned a program for the Policies known as Quick Pay Plus (QPP):

- Who initiated the QPP?

  John Bode expressed to John Mitchell concern about Robark Properties being able to continue to pay the required out-of-pocket premiums for the policies and asked whether going paid up on the policies might be possible/worthwhile.   John Bode and John Mitchell discussed a number of options, including QPP; John Bode chose that option.

(*See* Ex. 3, p. 2). This too seemingly indicated that Northwestern Mutual and Heirloom Advisors were not operating in different arenas with regards to the documents and information requested by the Subpoena and Robark's First Letter.

### Robark's Second Letter

31.     Robark responded with a second letter on November 7, 2023, which, in part, identified the many deficiencies in the prior production and requested that such deficiencies be

---

[1] Such boilerplate objections did not identify the documents, information, and communications Northwestern Mutual possessed but refused to provide which, of course, is not helpful. Such objections are also improper. *See Curtis v. Time Warner Ent.-Advance/Newhouse P'ship*, No. 3:12-CV-2370-JFA, 2013 WL 2099496 (D.S.C. May 14, 2013).

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

cured by November 21, 2023 ("Robark's Second Letter"). Robark's Second Letter is attached hereto as **Exhibit 5** and incorporated herein.

32.     On November 16, 2023, Northwestern Mutual responded to Robark's Second Letter. The response is attached hereto as **Exhibit 6** and incorporated herein ("Northwestern Mutual's Response to Robark's Second Letter").

33.     None of the documents, communications or information requested by Robark were provided and Northwestern Mutual affirmatively stated, "[w]e will not be providing anything more with respect to [Robark's Policies]." (*See id.*).

34.     Again, there was no mention by Northwestern Mutual that Robark's Second Letter should be directed to Heirloom Advisors or any other entity.

35.     On December 15, 2023, Robark filed a lawsuit against Northwestern Mutual seeking a judgment declaring it is entitled to the documents and information previously sought.

36.     Northwestern Mutual later obtained summary judgment in its favor in that case.[2] In obtaining summary judgment, however, Northwestern Mutual represented to the court:

> [Robark] provides no evidence that a life insurance entity has a fiduciary relationship with the policy holder. Instead, [Robark] pulled a screenshot of a separate webpage for a *separate* subsidiary's securities line of business [Heirloom Advisors].[3] Which has **nothing to do** with the life insurance line of business. The securities business [Heirloom Advisors] and the life insurance business [Northwestern Mutual] operate in *completely different arenas*. While the securities business may have fiduciary relationships, in the life insurance arena there is no fiduciary relationship. So even assuming, *in arguendo*, that [Robark] did have a fiduciary relationship with a financial advisor, *that advisor [Heirloom Advisors] is still affiliated as an independent contractor of a subsidiary corporation.* That securities business arrangement does not impute any special duties to the life insurance company line of business.

(February 3, 2025 filing attached hereto as **Exhibit 7**, p. 9) (emphasis added).

---

[2] Robark has filed an appeal, which is pending.

[3] The URL for what Northwestern Mutual represented to be a "separate webpage" is https://www.northwesternmutual.com/financialadvisor/john-mitchell/.

37.     For years, Northwestern Mutual instructed Robark to direct any correspondence concerning documents and information requested by Falls and Robark only to Northwestern Mutual. At the eleventh hour of the declaratory judgment action, however, Northwestern Mutual pointed the finger back at the original recipient of the Subpoena requests that started all of this, Heirloom Advisors.

38.     To be clear, the requests for documents and information were originally directed to Heirloom Advisors. Northwestern Mutual then represented that those specific requests should be directed to Northwestern Mutual, only to take the opposite position in its later representations to the Court.

39.     Mitchell is a CFP®. A CFP® is to follow the Code of Ethics and Standards of Conduct attached hereto as **Exhibit 8**. As Robark's financial advisor, Heirloom Advisors owes a fiduciary duty to Robark. (Ex. 7, p. 3). Such duty includes a duty of loyalty and duty of care, as well as a duty "***to follow [Robark's] instructions***." (*Id.*).

40.     On July 18, 2025, Robark sent a letter to Heirloom Advisors demanding the documents and information finally be produced. (*See* **Exhibit 9** attached hereto). Notably, this time Northwestern Mutual did not respond.

41.     Instead Robark received a response from Heirloom Advisors attached hereto as **Exhibit 10**. To date, none of the requested documents and information have been produced.

42.     All conditions precedent to this lawsuit have occurred, been waived, or have been satisfied.

<div align="center">

**FIRST CAUSE OF ACTION**
**(Breach of Fiduciary Duty as to Heirloom Advisors)**

</div>

43.     Robark realleges and incorporates by reference its allegations contained in the preceding paragraphs, as if the same were fully set forth herein.

<div align="center">

8

</div>

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

44.     Heirloom Advisors is Robark's financial advisor.

45.     Heirloom Advisors owed Robark a fiduciary duty as the parties enjoyed a relationship of trust and confidence whereby Robark reposed its confidence in Heirloom Advisors in connection with the Policies. Heirloom Advisors accepted such confidence.

46.     Heirloom Advisors breached its fiduciary duties to Plaintiff by, among other things, failing to follow Robark's instructions to produce the documents and information requested and failing to disclose to Robark and Falls for years that Northwestern Mutual and Heirloom Advisors have "nothing to do" with each other and "operate in completely different arenas."

47.     Robark has been harmed, and continues to be harmed, as a direct result of Heirloom Advisors' breaches of fiduciary duties.

48.     Robark is thus entitled to judgment against Heirloom Advisors for damages in amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Accounting as to Heirloom Advisors)

49.     Robark realleges and incorporates by reference its allegations contained in the preceding paragraphs, as if the same were fully set forth herein.

50.     Heirloom Advisors is Robark's financial advisor.

51.     Heirloom Advisors owes Robark a fiduciary duty as the parties enjoy a relationship of trust and confidence whereby Robark reposed its confidence in Heirloom Advisors in connection with the Policies. Heirloom Advisors accepted such confidence.

52.     Heirloom Advisors owes a duty to disclose information and documents concerning the Policies as instructed by Robark.

53.     Robark has instructed Heirloom Advisors to disclose information and documents concerning the Policies, which Heirloom Advisors has refused to provide.

9

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

54.     Robark lacks an adequate remedy at law as any remedy at law would not be as full and expeditious as an accounting.

### THIRD CAUSE OF ACTION
**(Negligent Misrepresentation as to Northwestern Mutual)**

55.     Robark realleges and incorporates by reference its allegations contained in the preceding paragraphs, as if the same were fully set forth herein.

56.     Falls originally served the Subpoena on Heirloom Advisors. Heirloom Advisors never responded.

57.     Northwestern Mutual instead contacted Falls in response to the Subpoena and represented to Falls that he should direct the exact same requests only to Northwestern Mutual.

58.     Northwestern Mutual maintained this representation in all subsequent interactions with Robark and Falls concerning the exact same Subpoena requests.

59.     Northwestern Mutual's representation was false. Northwestern Mutual knew it was false.

60.     Northwestern Mutual had a pecuniary interest in making the statement.

61.     Northwestern Mutual had a duty to see that truthful and accurate information was conveyed to Robark and Falls. Northwestern Mutual breached that duty.

62.     Robark and Falls justifiably relied on Northwestern Mutual to communicate truthfully as to who the Subpoena requests should be directed to and justifiably relied upon Northwestern Mutual's representations.

63.     Robark has been harmed, and continues to be harmed, as a direct result of Northwestern Mutual's misrepresentations.

64.     Robark is thus entitled to judgment against Northwestern Mutual for damages in amount to be proven at trial.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

## FOURTH CAUSE OF ACTION
### (Negligence as to Defendants)

65. Robark realleges and incorporates by reference its allegations contained in the preceding paragraphs, as if the same were fully set forth herein.

66. Defendants each owed Robark and Falls a duty to exercise reasonable care in making representations concerning the Policies.

67. Northwestern Mutual represented that the Subpoena requests should be directed to Northwestern Mutual. Heirloom Advisors did not make any contrary representation.

68. Robark and Falls relied upon Defendants' representations and pursued the Subpoena requests from Northwestern Mutual only. But for Defendants' representations, Robark and Falls would have pursued the requested documents and information from others, including, but not limited to, Heirloom Advisors.

69. Northwestern Mutual later represented to a court that the outstanding Subpoena requests should have been directed to Heirloom Advisors.

70. Defendants were negligent by failing to exercise reasonable care in response to the Subpoena requests. Among other things, Defendants did not make accurate representations as to who the Subpoena requests should be directed.

71. Robark was harmed as a direct result of Defendants' negligence.

72. Robark is thus entitled to judgment against Defendants for damages in amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Violation of South Carolina Unfair Trade Practices Act as to Defendants)

73. Robark realleges and incorporates by reference its allegations contained in the preceding paragraphs, as if the same were fully set forth herein.

74.    Northwestern Mutual has represented that the misconduct described herein is standard practice.

75.    The factual allegations contained herein constitute violations of the South Carolina Unfair Trade Practices Act ("SCUTPA") contained in S.C. Code § 39-59-10 *et seq*.

76.    Defendants made and affirmed unfair and deceptive representations to Robark and Falls concerning the documents and information requested.

77.    Defendants' unfair and deceptive acts affect the public interest as these acts are in violation of South Carolina law and are capable of repetition given that, among other things, Northwestern Mutual characterized such acts as standard practice.

78.    As the actual and proximate cause of Defendants' unfair and/or deceptive acts, Robark has suffered damages.

79.    Defendants' actions were willful and knowing violations of the South Carolina Unfair Trade Practices Act, thus entitling Robark to recover actual damages, treble damages, attorney's fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Robark prays for the following relief:

(1)    Judgment on the First Cause of Action in favor of Robark;

(2)    Judgment on the Second Cause of Action in favor of Robark;

(3)    Judgment on the Third Cause of Action in favor of Robark;

(4)    Judgment on the Fourth Cause of Action in favor of Robark;

(5)    Judgment on the Fifth Cause of Action in favor of Robark;

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

(6)     Damages to compensate Robark in connection with the First, Third, Fourth and Fifth Causes of Action, including, but not limited to, compensatory, consequential, punitive and treble damages, as well as pre-judgment and post-judgment interest thereon;

(7)     Accounting in connection with the Second Cause of Action.

(8)     An award of attorneys' fees and costs; and

(9)     Such other and further relief in Robark's favor as the Court deems just and proper under the circumstances.

<div style="margin-left: 45%;">

Respectfully submitted,

GALLIVAN, WHITE & BOYD, P.A.

By:     /s/ *Ioannis (Ian) G. Conits*
        Ioannis (Ian) G. Conits, Esq. (SC Bar No. 102675)
        Carter R. Massingill (S.C. Bar No. 101802)
        Stephanie G. Besselievre (S.C. Bar No. 105256)
        P.O. Box 10589
        Greenville, SC 29603
        (T) (864) 271-5430
        iconits@gwblawfirm.com
        cmassingill@gwblawfirm.com
        sbesselievre@gwblawfirm.com

*Attorneys for Plaintiff Robark Properties, LLC*

</div>

February 10, 2026

<div align="center">13</div>

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

# EXHIBIT 1

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

# JOHNSTON ALLISONHORD

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

Kimberly J. Kirk
Partner

WRITER'S E-MAIL ADDRESS:
kkirk@jahlaw.com

WRITER'S DIRECT DIAL:
704-998-2318

August 4, 2022

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

John F. Mitchell d/b/a Heirloom Advisors
1201 Edwards Mill Road, Suite 200
Raleigh, North Carolina 27607

Re:     *Mary Cooper Falls Wing vs. Goldman Sachs Trust Company, N.A., et al.*
(Wake County Superior Court Case Nos. 18-CVS-5916, 17-CVS-3947, 17-CVS-3283, 18-CVS-5830 and 15-E-1997)

Dear Sir/Madam:

This firm represents Ralph L. Falls, III in the above-captioned litigation. Please find enclosed a Subpoena Duces Tecum that requires production of the documents described therein.

As you will note, the subpoena identifies the place of production as Johnston, Allison & Hord, P.A., 1065 E. Morehead Street, Charlotte, North Carolina 28204. That said, we are willing to accommodate preferences for delivery, including electronic delivery. If you incur copying charges in the course of preparing your documents for production, please send us that information as we may reimburse you for your reasonable expenses.

Thank you for your cooperation. Should you have any questions, please do not hesitate to contact me.

Very truly yours,

JOHNSTON, ALLISON & HORD, P.A.

Kimberly J. Kirk

Enc. as noted

1065 East Morehead Street, Charlotte, NC 28204          ꟸ MERITAS®   jahlaw.com

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

# STATE OF NORTH CAROLINA

**File No.**

18-CVS-5916

_____WAKE_____ County

In The General Court Of Justice
☐ District    ☒ Superior Court Division

| Mary Cooper Falls Wing, et al. | Additional File Numbers |
|---|---|

| | 17 CVS 3947 | 17 CVS 3282 | 18 CVS 5830 |
|---|---|---|---|
| | 15 E 1997 | | |

**VERSUS**

| Goldman Sachs Trust Company, N.A., et al. | **SUBPOENA** |
|---|---|
| | G.S. 1A-1, Rule 45; 8-59, -61, -63; 15A-801, -802 |

**Party Requesting Subpoena**
☒ State/Plaintiff    ☐ Defendant

**NOTE TO PARTIES NOT REPRESENTED BY COUNSEL:** Subpoenas may be produced at your request, but must be signed and issued by the office of the Clerk of Superior Court, or by a magistrate or judge.

**TO**

| Name And Address Of Person Subpoenaed | Alternate Address |
|---|---|
| John F. Mitchell d/b/a Heirloom Advisors | |
| Attention: Records Custodian | |
| 1201 Edwards Mill Road, Suite 200 | |
| Raleigh                    NC    27607 | |
| Telephone No. | Telephone No. |

**YOU ARE COMMANDED TO:** *(check all that apply)*

☐ appear and testify, in the above entitled action, before the court at the place, date and time indicated below.

☐ appear and testify, in the above entitled action, at a deposition at the place, date and time indicated below.

☒ produce and permit inspection and copying of the following items, at the place, date and time indicated below.

   ☒ See attached list. *(List here if space sufficient)*

     See attached Exhibit A.

| Name And Location Of Court/Place Of Deposition/Place To Produce | Date To Appear/Produce, Until Released |
|---|---|
| Johnston Allison & Hord, P.A. | 8-25-2022 |
| 1065 East Morehead Street | **Time To Appear/Produce, Until Released**<br>10:00    ☒ AM  ☐ PM |
| Charlotte                    NC    28204 | **Date**<br>08/04/2022 |

| Name And Address Of Applicant Or Applicant's Attorney | Signature |
|---|---|
| David T. Lewis / Kimberly J. Kirk | |
| Johnston Allison & Hord, P.A. | |
| 1065 East Morehead Street | ☐ Deputy CSC   ☒ Assistant CSC   ☐ Clerk Of Superior Court |
| Charlotte                    NC    28204 | ☐ Magistrate   ☒ Attorney/DA   ☐ District Court Judge |
| **Telephone No. Of Applicant Or Applicant's Attorney**<br>(704) 332-1181 | ☐ Superior Court Judge |

**RETURN OF SERVICE**

I certify this subpoena was received and served on the person subpoenaed as follows:

By    ☐ personal delivery.          ☐ registered or certified mail, receipt requested and attached.

    ☐ telephone communication by Sheriff *(use only for a witness subpoenaed to appear and testify).*

    ☐ telephone communication by local law enforcement agency *(use only for a witness subpoenaed to appear and testify in a criminal case).*

    **NOTE TO COURT:** *If the witness was served by telephone communication from a local law enforcement agency in a criminal case, the court may not issue a show cause order or order for arrest against the witness until the witness has been served personally with the written subpoena.*

    ☐ I was unable to serve this subpoena. Reason unable to serve: _____.

| Service Fee<br>$ | ☐ Paid<br>☐ Due | Date Served | Name Of Authorized Server (type or print) | Signature Of Authorized Server | Title/Agency |
|---|---|---|---|---|---|

**NOTE TO PERSON REQUESTING SUBPOENA:** *A copy of this subpoena must be delivered, mailed or faxed to the attorney for each party in this case. If a party is not represented by an attorney, the copy must be mailed or delivered to the party. This does not apply in criminal cases.*

AOC-G-100, Rev. 2/18                    (Please see reverse side)
© 2018 Administrative Office of the Courts

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

**NOTE: Rule 45, North Carolina Rules of Civil Procedure, Subsections (c) and (d).**

**(c) Protection of Persons Subject to Subpoena**

(1) Avoid undue burden or expense. - A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena. The court shall enforce this subdivision and impose upon the party or attorney in violation of this requirement an appropriate sanction that may include compensating the person unduly burdened for lost earnings and for reasonable attorney's fees.

(2) For production of public records or hospital medical records. - Where the subpoena commands any custodian of public records or any custodian of hospital medical records, as defined in G.S. 8-44.1, to appear for the sole purpose of producing certain records in the custodian's custody, the custodian subpoenaed may, in lieu of personal appearance, tender to the court in which the action is pending by registered or certified mail or by personal delivery, on or before the time specified in the subpoena, certified copies of the records requested together with a copy of the subpoena and an affidavit by the custodian testifying that the copies are true and correct copies and that the records were made and kept in the regular course of business, or if no such records are in the custodian's custody, an affidavit to that effect. When the copies of records are personally delivered under this subdivision, a receipt shall be obtained from the person receiving the records. Any original or certified copy of records or an affidavit delivered according to the provisions of this subdivision, unless otherwise objectionable, shall be admissible in any action or proceeding without further certification or authentication. Copies of hospital medical records tendered under this subdivision shall not be open to inspection or copied by any person, except to the parties to the case or proceedings and their attorneys in depositions, until ordered published by the judge at the time of the hearing or trial. Nothing contained herein shall be construed to waive the physician-patient privilege or to require any privileged communication under law to be disclosed.

(3) Written objection to subpoenas. - Subject to subsection (d) of this rule, a person commanded to appear at a deposition or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or tangible things may, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, serve upon the party or the attorney designated in the subpoena written objection to the subpoena, setting forth the specific grounds for the objection. The written objection shall comply with the requirements of Rule 11. Each of the following grounds may be sufficient for objecting to a subpoena:
   a. The subpoena fails to allow reasonable time for compliance.
   b. The subpoena requires disclosure of privileged or other protected matter and no exception or waiver applies to the privilege or protection.
   c. The subpoena subjects a person to an undue burden or expense.
   d. The subpoena is otherwise unreasonable or oppressive.
   e. The subpoena is procedurally defective.

(4) Order of court required to override objection. - If objection is made under subdivision (3) of this subsection, the party serving the subpoena shall not be entitled to compel the subpoenaed person's appearance at a deposition or to inspect and copy materials to which an objection has been made except pursuant to an order of the court. If objection is made, the party serving the subpoena may, upon notice to the subpoenaed person, move at any time for an order to compel the subpoenaed person's appearance at the deposition or the production of the materials designated in the subpoena. The motion shall be filed in the court in the county in which the deposition or production of materials is to occur.

(5) Motion to quash or modify subpoena. - A person commanded to appear at a trial, hearing, deposition, or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or other tangible things, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, may file a motion to quash or modify the subpoena. The court shall quash or modify the subpoena if the subpoenaed person demonstrates the existence of any of the reasons set forth in subdivision (3) of this subsection. The motion shall be filed in the court in the county in which the trial, hearing, deposition, or production of materials is to occur.

(6) Order to compel; expenses to comply with subpoena. - When a court enters an order compelling a deposition or the production of records, books, papers, documents, electronically stored information, or other tangible things, the order shall protect any person who is not a party or an agent of a party from significant expense resulting from complying with the subpoena. The court may order that the person to whom the subpoena is addressed will be reasonably compensated for the cost of producing the records, books, papers, documents, electronically stored information, or tangible things specified in the subpoena.

(7) Trade secrets; confidential information. - When a subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information, a court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or when the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship, the court may order a person to make an appearance or produce the materials only on specified conditions stated in the order.

(8) Order to quash; expenses. - When a court enters an order quashing or modifying the subpoena, the court may order the party on whose behalf the subpoena is issued to pay all or part of the subpoenaed person's reasonable expenses including attorney's fees.

**(d) Duties in Responding to Subpoena**

(1) Form of response. - A person responding to a subpoena to produce records, books, documents, electronically stored information, or tangible things shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

(2) Form of producing electronically stored information not specified. - If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it ordinarily is maintained or in a reasonably useable form or forms.

(3) Electronically stored information in only one form. - The person responding need not produce the same electronically stored information in more than one form.

(4) Inaccessible electronically stored information. - The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, after considering the limitations of Rule 26(b)(1a). The court may specify conditions for discovery, including requiring the party that seeks discovery from a nonparty to bear the costs of locating, preserving, collecting, and producing the electronically stored information involved.

(5) Specificity of objection. - When information subject to a subpoena is withheld on the objection that it is subject to protection as trial preparation materials, or that it is otherwise privileged, the objection shall be made with specificity and shall be supported by a description of the nature of the communications, records, books, papers, documents, electronically stored information, or other tangible things not produced, sufficient for the requesting party to contest the objection.

---

## INFORMATION FOR WITNESS

**NOTE:** *If you have any questions about being subpoenaed as a witness, you should contact the person named on Page One of this Subpoena in the box labeled "Name And Address Of Applicant Or Applicant's Attorney."*

**DUTIES OF A WITNESS**

- Unless otherwise directed by the presiding judge, you must answer all questions asked when you are on the stand giving testimony.
- In answering questions, speak clearly and loudly enough to be heard.
- Your answers to questions must be truthful.
- If you are commanded to produce any items, you must bring them with you to court or to the deposition.
- You must continue to attend court until released by the court. You must continue to attend a deposition until the deposition is completed.

**BRIBING OR THREATENING A WITNESS**

It is a violation of State law for anyone to attempt to bribe, threaten, harass, or intimidate a witness. If anyone attempts to do any of these things concerning your involvement as a witness in a case, you should promptly report that to the district attorney or the presiding judge.

**WITNESS FEE**

A witness under subpoena and that appears in court to testify, is entitled to a small daily fee, and to travel expense reimbursement, if it is necessary to travel outside the county in order to testify. (The fee for an "expert witness" will be set by the presiding judge.) After you have been discharged as a witness, if you desire to collect the statutory fee, you should immediately contact the Clerk's office and certify your attendance as a witness so that you will be paid any amount due you.

AOC-G-100, Side Two, Rev. 2/18
© 2018 Administrative Office of the Courts

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

## EXHIBIT A

### *Definitions*

1.      "You" shall mean and refer to John F. Mitchell d/b/a Heirloom Advisors.

2.      As used herein, "Communications" or the like means the transmittal of any information, whether written, electronic or oral, in the form of facts, ideas, and inquiries or otherwise.

3.      As used herein, "Document" and "Documents" means all written, recorded or graphic matters whatsoever and all non-identical copies thereof, including but not limited to, papers, books, records, letters, photographs, tangible things, text messages, correspondence, *communications*, telegrams, cables, telex messages, memoranda, notes, notation, work papers, transcripts, minutes, reports, financial statements, bank statements, recordings of telephone or other conversations, statements, summaries, opinions, studies, analyses, evaluations, contracts, agreements, closing statements, jottings, agendas, bulletins, notices, announcements, advertisements, instructions, guidelines, charts, manuals, brochures, publications, schedules, lists, journals, statistical records, desk calendars, appointment books, diaries, lists, tabulations, newsletters, drafts, proofs, galleys, or other prepublication forms of materials, telephone list or indexes, computer printouts, data processing program libraries, data processing in-put or out-put, information stored electronically on disks, CD-ROMs, hard drives, microfilm, microfiche, books of account, records or invoices reflecting business operations, all records kept by electronic, photographic or mechanical means, any notes or drafts relating to any of the foregoing, and any other documents as defined in Rule 34 of the North Carolina Rules of Civil Procedure of any kind or character in Your possession, custody, control or to which You have access, or which You know exists.

4.      "Policies" shall mean and refer to any insurance policy or insurance contract procured or brokered by you which identifies any of the following as either an owner, insured, or beneficiary:

- o   Ralph L. Falls, Jr.
- o   Robark Properties, LLC
- o   Ralph L. Falls, III GST Trust
- o   Mary Cooper Falls Wing GST Trust
- o   Louise Falls Cone GST Trust
- o   John T. Bode, as Trustee
- o   Dianne Sellers
- o   Ben Staton (only policies of which he is a beneficiary are encompassed by this subpoena)
- o   Katherine Staton Chamberlain (only policies of which she is a beneficiary are encompassed by this subpoena)

### *Documents*

You have been subpoenaed to produce the following documents and things in Your possession at the offices of Johnston, Allison & Hord, P.A., 1065 E. Morehead Street, Charlotte, North Carolina, on or before Thursday, August 25 , 2022 at 10:00 a.m.

1. Copies of each of the Policies.

2. All beneficiary designations in Your file for each of the Policies.

3. All Communications in Your file associated with each of the Policies, including any Communications or inquiries received from any other person or entity related to the same.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Subpoena** has this date been served upon the persons named below by depositing a copy thereof in the United States mail, sufficient first-class postage prepaid, addressed as follows:

Elizabeth K. Arias
Jesse A. Schaefer
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
E-mail: Liz.Arias@wbd-us.com
E-mail: Jesse.Schaefer@wbd-us.com
*Co-Counsel for Mary Cooper Falls Wing*

Johnny M. Loper
Loper Law, PLLC
1212 Briar Patch Lane
Raleigh, North Carolina 27615-6901
E-mail: jloper@loper-law.com
*Co-Counsel for Mary Cooper Falls Wing*

Leslie C. Packer
Alex J. Hagan
Michelle A. Liguori
Ellis & Winters, LLP
4131 Parklake Avenue, Suite 400 (27612)
P.O. Box 33550
Raleigh, North Carolina 27636
E-mail: leslie.packer@elliswinters.com
E-mail: alex.hagan@elliswinters.com
E-mail: michelle.liguori@elliswinters.com
*Counsel for Toby Cone, Louise Falls Cone, Gillian Galls Cone, and Katharine Lenox Cone*

Walter E. Brock, Jr.
Young Moore and Henderson, P.A.
3101 Glenwood Avenue, Suite 200
P.O. Box 31627
Raleigh, North Carolina 27622
E-mail: Walter.Brock@youngmoorelaw.com
*Counsel for John T. Bode*

J. Mitchell Armbruster
James K. Dorsett, III
Eva Gullick Frongello
Smith Anderson Blount Dorsett Mitchell & Jernigan, LLP
150 Fayetteville Street, Suite 2300
P.O. Box 2611
Raleigh, North Carolina 27602-2611
E-mail: marmbruster@smithlaw.com
E-mail: JDorsett@smithlaw.com
E-mail: efrongello@smithlaw.com
*Counsel for Goldman Sachs Trust Company, N.A., in its corporate capacity as Executor of the Estate of Ralph L. Falls, Jr. and as Trustee of the Ralph Lane Falls Revocable Declaration of Trust*

Alan W. Duncan
Allison Mullins
Hillary M. Kies
Mullins Duncan Harrell & Russell, PLLC 300 North Greene Street, Suite 2000 Greensboro, North Carolina 27401
E-mail: aduncan@turningpointlit.com
E-mail: amullins@turningpointlit.com
E-mail: hkies@turningpointlit.com
*Counsel for Dianne C. Sellers*

Michael T. Medford
Manning, Fulton & Skinner, P.A.
3605 Glenwood Avenue, Suite 500
P.O. Box 20389
Raleigh, North Carolina 27619
E-mail: medford@manningfulton.com
*Counsel for University of North Carolina at Chapel Hill Foundation, Inc.*

3

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

This the 4ᵗʰ day of August, 2022.

JOHNSTON, ALLISON & HORD, P.A.

By: _____

David T. Lewis, N.C.S.B. # 29675
dlewis@jahlaw.com
Kimberly J. Kirk, N.C.S.B. # 44255
kkirk@jahlaw.com
1065 East Morehead Street
Charlotte, North Carolina 28204
*Counsel for Ralph L. Falls, III, individually a
nd on behalf of his minor children, M.E.F.,
L.L.F., and J.B.F.*

4

ELECTRONICALLY FILED - 2026 Feb 10 9:34 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

# JOHNSTON ALLISONHORD

1065 East Morehead Street
Charlotte, NC 28204



7016 0910 0000 6686 0240

CHARLOTTE NC 280
UG 2022 PM 4

John F. Mitchell d/b/a Heirloom Advisors
Attn: Records Custodian
1201 Edwards Mill Road, Suite 200
Raleigh, North Carolina 27607

27607-362550

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

START HERE▾

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

# EXHIBIT 2

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

# JOHNSTON ALLISONHORD

**Kimberly J. Kirk**
Partner

WRITER'S E-MAIL ADDRESS
kkirk@jahlaw.com

WRITER'S DIRECT DIAL:
704-998-2318

September 22, 2022

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Northwestern Mutual Life Insurance Company
720 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-4797

Re:     *Mary Cooper Falls Wing vs. Goldman Sachs Trust Company, N.A., et al.*
        (Wake County Superior Court Cases 18-CVS-5916, 17-CVS-3947, 17-CVS-3283,
        18-CVS-5830 and 15-E-1997)

Dear Sir/Madam:

This firm represents Ralph L. Falls, III in the above-captioned litigation. Please find enclosed a Subpoena Duces Tecum that requires production of the documents described therein.

As you will note, the subpoena identifies the place of production as Johnston, Allison & Hord, P.A., 1065 E. Morehead Street, Charlotte, North Carolina 28204. That said, we are willing to accommodate preferences for delivery, including electronic delivery. If you incur copying charges in the course of preparing your documents for production, please send us that information as we may reimburse you for your reasonable expenses.

Thank you for your cooperation. Should you have any questions, please do not hesitate to contact me.

Very truly yours,

JOHNSTON, ALLISON & HORD, P.A.

Kimberly J. Kirk

Enc. as noted

1065 East Morehead Street, Charlotte, NC 28204

 MERITAS®
LAW FIRMS WORLDWIDE    jahlaw.com

4883-2196-1012 v. 1

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

**STATE OF NORTH CAROLINA**

_____WAKE_____ County

File No.

18-CVS-5916

In The General Court Of Justice
☐ District    ☒ Superior Court Division

Mary Cooper Falls Wing, et al.

| Additional File Numbers | | |
|---|---|---|
| 17 CVS 3947 | 17 CVS 3282 | 18 CVS 5830 |
| 15 E 1997 | | |

**VERSUS**

Goldman Sachs Trust Company, N.A., et al.

**SUBPOENA**

G.S. 1A-1, Rule 45; 8-59, -61, -63; 15A-801, -802

Party Requesting Subpoena
☒ State/Plaintiff    ☐ Defendant

**NOTE TO PARTIES NOT REPRESENTED BY COUNSEL:** *Subpoenas may be produced at your request, but must be signed and issued by the office of the Clerk of Superior Court, or by a magistrate or judge.*

**TO**

Name And Address Of Person Subpoenaed
Northwestern Mutual Life Insurance Company

720 East Wisconsin Avenue

Milwaukee                    WI    53202-4797

Telephone No.
414-271-1444

Alternate Address

Telephone No.

**YOU ARE COMMANDED TO:** *(check all that apply)*

☐ appear and testify, in the above entitled action, before the court at the place, date and time indicated below.

☐ appear and testify, in the above entitled action, at a deposition at the place, date and time indicated below.

☒ produce and permit inspection and copying of the following items, at the place, date and time indicated below.

☒ See attached list. *(List here if space sufficient)*

See attached Exhibit A.

Name And Location Of Court/Place Of Deposition/Place To Produce
Johnston Allison & Hord, P.A.

1065 East Morehead Street

Charlotte                    NC    28204

Name And Address Of Applicant Or Applicant's Attorney
David T. Lewis / Kimberly J. Kirk
Johnston Allison & Hord, P.A.
1065 East Morehead Street
Charlotte                    NC    28204

Telephone No. Of Applicant Or Applicant's Attorney
(704) 332-1181

Date To Appear/Produce, Until Released
9-30-2022

Time To Appear/Produce, Until Released
10:00    ☒ AM    ☐ PM

Date
09/22/2022

Signature

☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court
☐ Magistrate    ☒ Attorney/DA    ☐ District Court Judge
                                 ☐ Superior Court Judge

**RETURN OF SERVICE**

I certify this subpoena was received and served on the person subpoenaed as follows:

By    ☐ personal delivery.    ☐ registered or certified mail, receipt requested and attached.

☐ telephone communication by Sheriff *(use only for a witness subpoenaed to appear and testify).*

☐ telephone communication by local law enforcement agency *(use only for a witness subpoenaed to appear and testify in a criminal case).*

**NOTE TO COURT:** *If the witness was served by telephone communication from a local law enforcement agency in a criminal case, the court may not issue a show cause order or order for arrest against the witness until the witness has been served personally with the written subpoena.*

☐ I was unable to serve this subpoena. Reason unable to serve: _____.

| Service Fee | ☐ Paid | Date Served | Name Of Authorized Server (type or print) | Signature Of Authorized Server | Title/Agency |
|---|---|---|---|---|---|
| $ | ☐ Due | | | | |

**NOTE TO PERSON REQUESTING SUBPOENA:** *A copy of this subpoena must be delivered, mailed or faxed to the attorney for each party in this case. If a party is not represented by an attorney, the copy must be mailed or delivered to the party. This does not apply in criminal cases.*

AOC-G-100, Rev. 2/18
© 2018 Administrative Office of the Courts

*(Please see reverse side)*

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

**NOTE: Rule 45, North Carolina Rules of Civil Procedure, Subsections (c) and (d).**

**(c) Protection of Persons Subject to Subpoena**

(1) <u>Avoid undue burden or expense</u>. - A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena. The court shall enforce this subdivision and impose upon the party or attorney in violation of this requirement an appropriate sanction that may include compensating the person unduly burdened for lost earnings and for reasonable attorney's fees.

(2) <u>For production of public records or hospital medical records</u>. - Where the subpoena commands any custodian of public records or any custodian of hospital medical records, as defined in G.S. 8-44.1, to appear for the sole purpose of producing certain records in the custodian's custody, the custodian subpoenaed may, in lieu of personal appearance, tender to the court in which the action is pending by registered or certified mail or by personal delivery, on or before the time specified in the subpoena, certified copies of the records requested together with a copy of the subpoena and an affidavit by the custodian testifying that the copies are true and correct copies and that the records were made and kept in the regular course of business, or if no such records are in the custodian's custody, an affidavit to that effect. When the copies of records are personally delivered under this subdivision, a receipt shall be obtained from the person receiving the records. Any original or certified copy of records or an affidavit delivered according to the provisions of this subdivision, unless otherwise objectionable, shall be admissible in any action or proceeding without further certification or authentication. Copies of hospital medical records tendered under this subdivision shall not be open to inspection or copied by any person, except to the parties to the case or proceedings and their attorneys in depositions, until ordered published by the judge at the time of the hearing or trial. Nothing contained herein shall be construed to waive the physician-patient privilege or to require any privileged communication under law to be disclosed.

(3) <u>Written objection to subpoenas</u>. - Subject to subsection (d) of this rule, a person commanded to appear at a deposition or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or tangible things may, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, serve upon the party or the attorney designated in the subpoena written objection to the subpoena, setting forth the specific grounds for the objection. The written objection shall comply with the requirements of Rule 11. Each of the following grounds may be sufficient for objecting to a subpoena:
   a. The subpoena fails to allow reasonable time for compliance.
   b. The subpoena requires disclosure of privileged or other protected matter and no exception or waiver applies to the privilege or protection.
   c. The subpoena subjects a person to an undue burden or expense.
   d. The subpoena is otherwise unreasonable or oppressive.
   e. The subpoena is procedurally defective.

(4) <u>Order of court required to override objection</u>. - If objection is made under subdivision (3) of this subsection, the party serving the subpoena shall not be entitled to compel the subpoenaed person's appearance at a deposition or to inspect and copy materials to which an objection has been made except pursuant to an order of the court. If objection is made, the party serving the subpoena may, upon notice to the subpoenaed person, move at any time for an order to compel the subpoenaed person's appearance at the deposition or the production of the materials designated in the subpoena. The motion shall be filed in the court in the county in which the deposition or production of materials is to occur.

(5) <u>Motion to quash or modify subpoena</u>. - A person commanded to appear at a trial, hearing, deposition, or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or other tangible things, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, may file a motion to quash or modify the subpoena. The court shall quash or modify the subpoena if the subpoenaed person demonstrates the existence of any of the reasons set forth in subdivision (3) of this subsection. The motion shall be filed in the court in the county in which the trial, hearing, deposition, or production of materials is to occur.

(6) <u>Order to compel; expenses to comply with subpoena</u>. - When a court enters an order compelling a deposition or the production of records, books, papers, documents, electronically stored information, or other tangible things, the order shall protect any person who is not a party or an agent of a party from significant expense resulting from complying with the subpoena. The court may order that the person to whom the subpoena is addressed will be reasonably compensated for the cost of producing the records, books, papers, documents, electronically stored information, or tangible things specified in the subpoena.

(7) <u>Trade secrets; confidential information</u>. - When a subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information, a court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or when the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship, the court may order a person to make an appearance or produce the materials only on specified conditions stated in the order.

(8) <u>Order to quash; expenses</u>. - When a court enters an order quashing or modifying the subpoena, the court may order the party on whose behalf the subpoena is issued to pay all or part of the subpoenaed person's reasonable expenses including attorney's fees.

**(d) Duties in Responding to Subpoena**

(1) <u>Form of response</u>. - A person responding to a subpoena to produce records, books, documents, electronically stored information, or tangible things shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

(2) <u>Form of producing electronically stored information not specified</u>. - If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it ordinarily is maintained or in a reasonably useable form or forms.

(3) <u>Electronically stored information in only one form</u>. - The person responding need not produce the same electronically stored information in more than one form.

(4) <u>Inaccessible electronically stored information</u>. - The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, after considering the limitations of Rule 26(b)(1a).The court may specify conditions for discovery, including requiring the party that seeks discovery from a nonparty to bear the costs of locating, preserving, collecting, and producing the electronically stored information involved.

(5) <u>Specificity of objection</u>. - When information subject to a subpoena is withheld on the objection that it is subject to protection as trial preparation materials, or that it is otherwise privileged, the objection shall be made with specificity and shall be supported by a description of the nature of the communications, records, books, papers, documents, electronically stored information, or other tangible things not produced, sufficient for the requesting party to contest the objection.

## INFORMATION FOR WITNESS

**NOTE:** *If you have any questions about being subpoenaed as a witness, you should contact the person named on Page One of this Subpoena in the box labeled "Name And Address Of Applicant Or Applicant's Attorney."*

**DUTIES OF A WITNESS**
- Unless otherwise directed by the presiding judge, you must answer all questions asked when you are on the stand giving testimony.
- In answering questions, speak clearly and loudly enough to be heard.
- Your answers to questions must be truthful.
- If you are commanded to produce any items, you must bring them with you to court or to the deposition.
- You must continue to attend court until released by the court. You must continue to attend a deposition until the deposition is completed.

**BRIBING OR THREATENING A WITNESS**
It is a violation of State law for anyone to attempt to bribe, threaten, harass, or intimidate a witness. If anyone attempts to do any of these things concerning your involvement as a witness in a case, you should promptly report that to the district attorney or the presiding judge.

**WITNESS FEE**
A witness under subpoena and that appears in court to testify, is entitled to a small daily fee, and to travel expense reimbursement, if it is necessary to travel outside the county in order to testify. (The fee for an "expert witness" will be set by the presiding judge.) After you have been discharged as a witness, if you desire to collect the statutory fee, you should immediately contact the Clerk's office and certify your attendance as a witness so that you will be paid any amount due you.

AOC-G-100, Side Two, Rev. 2/18
© 2018 Administrative Office of the Courts

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

## EXHIBIT A

*Definitions*

1.     "You" shall mean and refer to Northwestern Mutual Life Insurance Company and any predecessors, successors, assigns, subsidiaries, and affiliates thereof.

2.     As used herein, "Communications" or the like means the transmittal of any information, whether written, electronic or oral, in the form of facts, ideas, and inquiries or otherwise.

3.     As used herein, "Document" and "Documents" means all written, recorded or graphic matters whatsoever and all non-identical copies thereof, including but not limited to, papers, books, records, letters, photographs, tangible things, text messages, correspondence, communications, telegrams, cables, telex messages, memoranda, notes, notation, work papers, transcripts, minutes, reports, financial statements, bank statements, recordings of telephone or other conversations, statements, summaries, opinions, studies, analyses, evaluations, contracts, agreements, closing statements, jottings, agendas, bulletins, notices, announcements, advertisements, instructions, guidelines, charts, manuals, brochures, publications, schedules, lists, journals, statistical records, desk calendars, appointment books, diaries, lists, tabulations, newsletters, drafts, proofs, galleys, or other prepublication forms of materials, telephone list or indexes, computer printouts, data processing program libraries, data processing in-put or out-put, information stored electronically on disks, CD-ROMs, hard drives, microfilm, microfiche, books of account, records or invoices reflecting business operations, all records kept by electronic, photographic or mechanical means, any notes or drafts relating to any of the foregoing, and any other documents as defined in Rule 34 of the North Carolina Rules of Civil Procedure of any kind or character in Your possession, custody, control or to which You have access, or which You know exists.

4.     "Policies" shall mean and refer to any insurance policy or insurance contract issued by You which identifies any of the following as either an owner, insured, or beneficiary:

- o   Ralph L. Falls, Jr. (SS# 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)
- o   Robark Properties, LLC (EIN 57-0710303)
    - ▪   Including policy numbers 19206513, 19190411, 19042255
- o   Ralph L. Falls, III GST Trust (EIN 26-6242912)
- o   Mary Cooper Falls Wing GST Trust (EIN 26-6242772)
- o   Louise Falls Cone GST Trust (EIN 26-6242863)
- o   John T. Bode, as Trustee (EIN 46-4916222)
- o   Dianne Sellers *(please call Beckie Johnson at (704) 998-2313 for SS#)*
- o   Ben Staton (only policies of which he is a beneficiary are encompassed by this subpoena)
- o   Katherine Staton Chamberlain (only policies of which she is a beneficiary are encompassed by this subpoena)

*Documents*

You have been subpoenaed to produce the following documents and things in Your possession at the offices of Johnston, Allison & Hord, P.A., 1065 E. Morehead Street, Charlotte, North Carolina, on or before **Friday, September 30, 2022 at 10:00 a.m.**

1. Copies of each of the Policies.

2. All beneficiary designations in Your file for each of the Policies.

3. All Communications in Your file associated with each of the Policies, including any Communications or inquiries received from any other person or entity related to the same.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Subpoena** has this date been served upon the persons named below by depositing a copy thereof in the United States mail, sufficient first-class postage prepaid, addressed as follows:

Elizabeth K. Arias
Jesse A. Schaefer
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
E-mail: Liz.Arias@wbd-us.com
E-mail: Jesse.Schaefer@wbd-us.com
*Co-Counsel for Mary Cooper Falls Wing*

Johnny M. Loper
Loper Law, PLLC
1212 Briar Patch Lane
Raleigh, North Carolina 27615-6901
E-mail: jloper@loper-law.com
*Co-Counsel for Mary Cooper Falls Wing*

Leslie C. Packer
Alex J. Hagan
Michelle A. Liguori
Ellis & Winters, LLP
4131 Parklake Avenue, Suite 400 (27612)
P.O. Box 33550
Raleigh, North Carolina 27636
E-mail: leslie.packer@elliswinters.com
E-mail: alex.hagan@elliswinters.com
E-mail: michelle.liguori@elliswinters.com
*Counsel for Toby Cone, Louise Falls Cone,*
*Gillian Galls Cone, and Katharine Lenox Cone*

Walter E. Brock, Jr.
Young Moore and Henderson, P.A.
3101 Glenwood Avenue, Suite 200
P.O. Box 31627
Raleigh, North Carolina 27622
E-mail: Walter.Brock@youngmoorelaw.com
*Counsel for John T. Bode*

J. Mitchell Armbruster
James K. Dorsett, III
Eva Gullick Frongello
Smith Anderson Blount Dorsett Mitchell
& Jernigan, LLP
150 Fayetteville Street, Suite 2300
P.O. Box 2611
Raleigh, North Carolina 27602-2611
E-mail: marmbruster@smithlaw.com
E-mail: JDorsett@smithlaw.com
E-mail: efrongello@smithlaw.com
*Counsel for Goldman Sachs Trust*
*Company, N.A., in its corporate*
*capacity as Executor of the Estate of Ralph L.*
*Falls, Jr. and as Trustee of the Ralph Lane*
*Falls Revocable Declaration of Trust*

Alan W. Duncan
Allison Mullins
Hillary M. Kies
Mullins Duncan Harrell & Russell,
PLLC 300 North Greene Street, Suite
2000 Greensboro, North Carolina 27401
E-mail: aduncan@turningpointlit.com
E-mail: amullins@turningpointlit.com
E-mail: hkies@tumingpointlit.com
*Counsel for Dianne C. Sellers*

Michael T. Medford
Manning, Fulton & Skinner, P.A.
3605 Glenwood Avenue, Suite 500
P.O. Box 20389
Raleigh, North Carolina 27619
E-mail: medford@manningfulton.com
*Counsel for University of North Carolina at*
*Chapel Hill Foundation, Inc.*

This the 22nd day of September, 2022.

JOHNSTON, ALLISON & HORD, P.A.

By: _____
David T. Lewis, N.C.S.B. # 29675
dlewis@jahlaw.com
Kimberly J. Kirk, N.C.S.B. # 44255
kkirk@jahlaw.com
1065 East Morehead Street
Charlotte, North Carolina 28204
*Counsel for Ralph L. Falls, III, individually
and on behalf of his minor children, M.E.F.,
L.L.F., and J.B.F.*

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

# EXHIBIT 3

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

**JOHNSTON ALLISONHORD**

Kimberly J. Kirk
Partner

WRITER'S E-MAIL ADDRESS:
kkirk@jahlaw.com

WRITER'S DIRECT DIAL:
704-998-2318

May 23, 2023

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Northwestern Mutual Life Insurance Company
720 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-4797

 Re:  **Northwestern Mutual Policy Nos. ▮▮6513, ▮▮0411, and ▮▮2255**
 Owner: Robark Properties, LLC
 *Wing v. Goldman Sachs Trust Company, N.A., et al.* (Wake County Case Nos. 18-CVS-5916, 17-CVS-3947, 17-CVS-3283, 18-CVS-5830 and 15-E-1997)

Greetings:

 This firm represents Ralph L. Falls, III. As you are aware, Mr. Falls is the managing member of Robark Properties, LLC ("Robark"). Robark has been a customer of Northwestern Mutual Life Insurance Company ("Northwestern") for over a decade. This letter pertains specifically to the following Northwestern policies owned by Robark: policy nos. ▮▮6513, ▮▮0411, and ▮▮2255 (the "Policies").

 Despite repeated requests, Mr. Falls has been unable to obtain information from Northwestern regarding the Policies. To the contrary, he has been told that much of what he requested was provided in response to the subpoena served on Northwestern on or about September 22, 2022. Unfortunately, that is not accurate. Northwestern's subpoena response was skeletal at best and hardly the type of response that would be expected in response to a subpoena requesting documents for policies that had been in effect for nearly a decade. If additional documents were compiled internally, they were not produced by the paralegal handling the file. That must be corrected.

 Putting aside the outstanding subpoena and Northwestern's deficient response thereto, Mr. Falls is now the acting manager of Robark and is entitled to all records associated with Robark's Policies at Northwestern. A copy of the fully executed corporate resolution appointing Mr. Falls is enclosed for your records. To be clear, he is the sole representative of Robark with whom Northwestern should be corresponding, and Northwestern's refusal to provide the information Mr. Falls has requested is impeding his ability to prudently manage the company's affairs. Should Northwestern continue to impose obstacles and unnecessary delays in responding to its customer's requests for information, Mr. Falls will have no choice but to pursue all remedies available at law to address the same.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

To summarize the information requests to date, Mr. Falls seeks the following Policy-related documentation and information from Northwestern:

1. All account records, statements, and documentation reflecting transactions and structural changes related to the Policies from 2013 through present.

2. All documentation reflecting ownership and beneficiaries of the Policies, as well as any changes made to ownership and beneficiaries from 2013 through present.

3. All communications related to Robark and / or the Policies from 2013 through present. This specifically includes, without limitation, all communications between anyone at Northwestern and the following:

   a. John Bode (jbode@bodepllc.com and jbode@bodeharrell.com)
   b. Coleen Miller
   c. Brodie Burwell (email address includes, without limitation, bburwell@envisage.law)
   d. John Mitchell
   e. David Woody
   f. Any representative, agent, or employee of Heirloom Advisors,
   g. Any representative of the Condrey Network up through 2021 (email address includes, without limitation, mike.condrey@nm.com)
   h. Any representative of the Berry Network from 2021 to present (email address includes, without limitation, douglas. berry@nm.com)
   i. Any representative of Norton Collar Lund Lilley PLLC, and its predecessor accounting firms
   j. Any representative of Barham Guy Frelier, P.A., and its predecessor accounting firms, and
   k. Dianne Sellers.

4. All communications with third parties (including John Bode or his attorney, Walter Brock) related to Robark, the above-referenced litigation, or the subpoena served on Northwestern Mutual on or about September 22, 2022. A copy of the subpoena is included herewith.

5. Information regarding all administrative fees charged to Robark by Northwestern from 2013 through present, include a statement itemizing all compensation and commissions received by any individual or entity, including John F. Mitchell, David Woody, and Heirloom Advisors, associated with the Policies.

6. All documentation and communications regarding management of the Policies by John F. Mitchell and David Woody from 2013 through present. This includes information regarding the timing and circumstances of any changes in Northwestern personnel assigned or associated with the Robark account and Policies.

7. All documents and communications related to the ISA closure, as well information regarding who directed the ISA to be closed, when the directive to close the ISA was communicated, and who at Northwestern Mutual effected the closure.

8. All documents and communications related to use of Quik Pay Plus ("QPP") for the Policies. Specifically, information indicating:

   a. When was QPP initiated?
   b. What was the reason for initiating the QPP?
   c. Who—internally and externally—initiated the QPP?

9. Documentation or a statement explaining what involvement, if any, David Woody has had with the Policies since 2013.

It is our hope that Northwestern will use this opportunity to promptly address its customer's request for information. Given Jeffrey Pink's representation to Mr. Falls that all of the requested information has previously been compiled following receipt of the subpoena, we would expect that supplementation should not be particularly onerous. That said, if you foresee any challenges in providing the requested information within the next twenty (20) days, please call me to discuss.

Very truly yours,

JOHNSTON, ALLISON & HORD, P.A.

Kimberly J. Kirk

Enc. as noted

cc:    Jeffrey Pink (via email: jeffreypink@northwesternmutual.com)
       Sean Berndt (via email: seanberndt@northwesternmutual.com)
       Jason Freitag (via email: jasonfreitag@northwesternmutual.com)
       Robark Properties, LLC (via email)

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

3

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

# EXHIBIT 4

**Northwestern Mutual**

M. Christine Cowles
Assistant General Counsel
720 East Wisconsin Avenue, S632
Milwaukee, WI 53202-4797
414-665-1201 office
414-625-1201 fax
chriscowles@northwesternmutual.com

June 22, 2023

Kimberly J. Kirk
Johnston, Allison & Hord, P.A.
1065 East Morehead Streety
Charlotte, NC  28204

> RE:   Northwestern Mutual Policy Nos. ███6513, ███0411, and ███2255
> Owner:  Robark Properties, LLC
> *Wing v. Goldman Sachs Trust Company, N.A. et al.* (Wake County Case No. 18- CVS-5916, 17-CVS-3947, 17-CVS-3283, 18-CVS-5830 and 15-E-1997)

Dear Ms. Kirk:

This is in follow-up to our receipt of your May 23, 2023, letter and our telephone discussion earlier this week.

In your letter, you referenced the subpoena served on Northwestern Mutual via Certified Mail in September (copy attached).  You expressed that Northwestern Mutual's response, sent via secure email on October 3, 2022, was "skeletal at best," and you went on to request further information concerning the above-referenced policies (hereinafter "Policies").

As I indicated on the phone, I was surprised to receive your letter, given that in the more than six months that had passed since our response to your subpoena, we had received no further communication from you – let alone any objection to our response.  Further, it appears that on April 12, 2023, a Motion to Approve Settlement Agreement and Enter Judgment was filed in the above-referenced matters, and by Order and Judgment signed on June 2, 2023, the Court granted said Motion and  entered final Judgment, dismissing these matters.

While we understand that settlement discussions were underway at the time we responded to the subpoena (and that you were therefore trying to minimize additional attorney's fees), we believe, given the closure of the cases pursuant to which the subpoena had been issued, that any objections to Northwestern Mutual's 2022 response are moot.  That said, while we know that our Home Office (Client Services and Compliance) has already provided your client with much of the requested information since his initial, 2020, complaint, I have reviewed your requests and am providing you with the following with respect to the Policies:

- All Annual Policy Statements for the Policies, dating from 2013 to 2020.  Your client was provided with all of these Annual Policy Statements on April 5, 2023.  However, we provided, in

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

July 5, 2022
Page 2

response to the Subpoena, only those Statements for 2021 and 2022. Those I am providing today will complete the set for you.

- In response to the subpoena, we provided all requested documents regarding ownership/beneficiary changes. I am today providing the requested documents concerning policy and dividend changes.

- You asked in the subpoena for copies of each of the policies. As previously advised, we do not maintain copies of insurance policies for our customers, but we would be happy to order policy replicas if you wish.

- You have asked for information regarding all administrative fees charged to Robark by Northwestern Mutual from 2013 to the present. No administrative fees have ever been charged to Robark for any of the Policies.

- As your client previously has been advised, all compensation paid to our financial representatives is paid in accordance with contractual obligations, and all documentation/information about said compensation is proprietary. That said, the changes that were made to the Policies resulted in Robark paying less in out-of-pocket premiums, which, in turn, resulted in the financial representative receiving lower compensation.

- You have asked for all documents and communications related to the ISA closure. I am attaching said documents.

- You have asked for all documents and communications related to use of Quick Pay Plus ("QPP") for the Policies. Specifically, you have asked:

  - When was QPP initiated?

    Policy ███2255: April 2015
    Policy ███5513: November 2015
    Policy ███0411: November 2015

  - Why was QPP initiated?

    In each case QPP was initiated to save on out-of-pocket-expense in an effort to maintain the then-current death benefit to the fullest extent possible. The full premium is still being paid but with a combination of the eligible portion of the dividend, surrender of additions that still maintain the death benefit, and, finally, any out-of-pocket premium to cover the shortfall.

  - Who initiated the QPP?

    John Bode expressed to John Mitchell concern about Robark Properties being able to continue to pay the required out-of-pocket premiums for the policies and asked whether going paid up on the policies might be possible/worthwhile. John Bode and John Mitchell discussed a number of options, including QPP; John Bode chose that option.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

July 5, 2022
Page 3

Please note that your client already has been provided with all documents relating to Quick Pay Plus.

We thought it might be helpful to provide you with a summary of all premiums paid on the policies beginning in 2014 through the dates shown. Please see the attached spreadsheet.

We must decline to respond to the balance of your requests. Those that remain are not only overbroad and unduly burdensome; they also are vague and ambiguous in their descriptions of what you are requesting.

As to any future servicing needs your client may have with respect to the Policies – I'll reiterate the messaging he has already received: He is free (1) to call Clayton Braddy at the Client Relations Center at the Northwestern Mutual Raleigh Office (919-746-9919); (2) to call our Home Office (866-950-4644); or (3) to find another Northwestern Mutual financial representative to assist him. If none of those options appeals to him, he is, of course, also free to take his/Robark's business elsewhere.

Finally, I would ask that you direct any future correspondence to me. And please advise your client that aside from addressing policy servicing needs, we will not be responding to any future communications from him relative to the Policies, including but not limited to questions he has asked that we have declined to answer, or answers that we have provided but that he finds unsatisfactory.

Very truly yours,

M. Christine Cowles

Very truly yours,

M. Christine Cowles

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

# JOHNSTON ALLISONHORD

Kimberly J. Kirk
Partner

WRITER'S E-MAIL ADDRESS:
kkirk@jahlaw.com

WRITER'S DIRECT DIAL:
704-998-2318

August 4, 2022

## VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED

John F. Mitchell d/b/a Heirloom Advisors
1201 Edwards Mill Road, Suite 200
Raleigh, North Carolina 27607

Re:  *Mary Cooper Falls Wing vs. Goldman Sachs Trust Company, N.A., et al.*
(Wake County Superior Court Case Nos. 18-CVS-5916, 17-CVS-3947, 17-CVS-3283, 18-CVS-5830 and 15-E-1997)

Dear Sir/Madam:

This firm represents Ralph L. Falls, III in the above-captioned litigation. Please find enclosed a Subpoena Duces Tecum that requires production of the documents described therein.

As you will note, the subpoena identifies the place of production as Johnston, Allison & Hord, P.A., 1065 E. Morehead Street, Charlotte, North Carolina 28204. That said, we are willing to accommodate preferences for delivery, including electronic delivery. If you incur copying charges in the course of preparing your documents for production, please send us that information as we may reimburse you for your reasonable expenses.

Thank you for your cooperation. Should you have any questions, please do not hesitate to contact me.

Very truly yours,

JOHNSTON, ALLISON & HORD, P.A.

Kimberly J. Kirk

Enc. as noted

1065 East Morehead Street, Charlotte, NC 28204

MERITAS    jahlaw.com

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

## STATE OF NORTH CAROLINA

| | |
|---|---|
| **WAKE** County | **File No.** 18-CVS-5916 |

**In The General Court Of Justice**
☐ District  ☒ Superior Court Division

| | |
|---|---|
| Mary Cooper Falls Wing, et al. | **Additional File Numbers** |
| | 17 CVS 3947   17 CVS 3282   18 CVS 5830 |
| | 15 E 1997 |

**VERSUS**

| | |
|---|---|
| Goldman Sachs Trust Company, N.A., et al. | **SUBPOENA** |
| | G.S. 1A-1, Rule 45; 8-59, -61, -63; 15A-801, -802 |

| Party Requesting Subpoena | NOTE TO PARTIES NOT REPRESENTED BY COUNSEL: Subpoenas may be produced at your request, but must be |
|---|---|
| ☒ State/Plaintiff  ☐ Defendant | signed and issued by the office of the Clerk of Superior Court, or by a magistrate or judge. |

| TO | Name And Address Of Person Subpoenaed | Alternate Address |
|---|---|---|
| | John F. Mitchell d/b/a Heirloom Advisors | |
| | Attention: Records Custodian | |
| | 1201 Edwards Mill Road, Suite 200 | |
| | Raleigh     NC     27607 | |
| | Telephone No. | Telephone No. |

**YOU ARE COMMANDED TO:** *(check all that apply)*

☐ appear and testify, in the above entitled action, before the court at the place, date and time indicated below.

☐ appear and testify, in the above entitled action, at a deposition at the place, date and time indicated below.

☒ produce and permit inspection and copying of the following items, at the place, date and time indicated below.

　☒ See attached list. *(List here if space sufficient)*

　　See attached Exhibit A.

| Name And Location Of Court/Place Of Deposition/Place To Produce | Date To Appear/Produce, Until Released |
|---|---|
| Johnston Allison & Hord, P.A. | 8-25-2022 |
| 1065 East Morehead Street | Time To Appear/Produce, Until Released |
| | 10:00     ☒ AM  ☐ PM |
| Charlotte     NC     28204 | Date |
| Name And Address Of Applicant Or Applicant's Attorney | 08/04/2022 |
| David T. Lewis / Kimberly J. Kirk | Signature |
| Johnston Allison & Hord, P.A. | |
| 1065 East Morehead Street | ☐ Deputy CSC  ☒ Assistant CSC  ☐ Clerk Of Superior Court |
| Charlotte     NC     28204 | ☐ Magistrate  ☒ Attorney/DA  ☐ District Court Judge |
| Telephone No. Of Applicant Or Applicant's Attorney | ☐ Superior Court Judge |
| (704) 332-1181 | |

### RETURN OF SERVICE

I certify this subpoena was received and served on the person subpoenaed as follows:

By  ☐ personal delivery.     ☐ registered or certified mail, receipt requested and attached.

　☐ telephone communication by Sheriff *(use only for a witness subpoenaed to appear and testify).*

　☐ telephone communication by local law enforcement agency *(use only for a witness subpoenaed to appear and testify in a criminal case).*

　　**NOTE TO COURT:** *If the witness was served by telephone communication from a local law enforcement agency in a criminal case, the court may not issue a show cause order or order for arrest against the witness until the witness has been served personally with the written subpoena.*

　☐ I was unable to serve this subpoena. Reason unable to serve: _____.

| Service Fee ☐ Paid | Date Served | Name Of Authorized Server (type or print) | Signature Of Authorized Server | Title/Agency |
|---|---|---|---|---|
| $　　☐ Due | | | | |

**NOTE TO PERSON REQUESTING SUBPOENA:** A copy of this subpoena must be delivered, mailed or faxed to the attorney for each party in this case. If a party is not represented by an attorney, the copy must be mailed or delivered to the party. This does not apply in criminal cases.

AOC-G-100, Rev. 2/18
© 2018 Administrative Office of the Courts

*(Please see reverse side)*

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

NOTE: Rule 45, North Carolina Rules of Civil Procedure, Subsections (c) and (d).

**(c) Protection of Persons Subject to Subpoena**

(1) Avoid undue burden or expense. - A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena. The court shall enforce this subdivision and impose upon the party or attorney in violation of this requirement an appropriate sanction that may include compensating the person unduly burdened for lost earnings and for reasonable attorney's fees.

(2) For production of public records or hospital medical records. - Where the subpoena commands any custodian of public records or any custodian of hospital medical records, as defined in G.S. 8-44.1, to appear for the sole purpose of producing certain records in the custodian's custody, the custodian subpoenaed may, in lieu of personal appearance, tender to the court in which the action is pending by registered or certified mail or by personal delivery, on or before the time specified in the subpoena, certified copies of the records requested together with a copy of the subpoena and an affidavit by the custodian testifying that the copies are true and correct copies and that the records were made and kept in the regular course of business, or if no such records are in the custodian's custody, an affidavit to that effect. When the copies of records are personally delivered under this subdivision, a receipt shall be obtained from the person receiving the records. Any original or certified copy of records or an affidavit delivered according to the provisions of this subdivision, unless otherwise objectionable, shall be admissible in any action or proceeding without further certification or authentication. Copies of hospital medical records tendered under this subdivision shall not be open to inspection or copied by any person, except to the parties to the case or proceedings and their attorneys in depositions, until ordered published by the judge at the time of the hearing or trial. Nothing contained herein shall be construed to waive the physician-patient privilege or to require any privileged communication under law to be disclosed.

(3) Written objection to subpoenas. - Subject to subsection (d) of this rule, a person commanded to appear at a deposition or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or tangible things may, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, serve upon the party or the attorney designated in the subpoena written objection to the subpoena, setting forth the specific grounds for the objection. The written objection shall comply with the requirements of Rule 11. Each of the following grounds may be sufficient for objecting to a subpoena:
 a. The subpoena fails to allow reasonable time for compliance.
 b. The subpoena requires disclosure of privileged or other protected matter and no exception or waiver applies to the privilege or protection.
 c. The subpoena subjects a person to an undue burden or expense.
 d. The subpoena is otherwise unreasonable or oppressive.
 e. The subpoena is procedurally defective.

(4) Order of court required to override objection. - If objection is made under subdivision (3) of this subsection, the party serving the subpoena shall not be entitled to compel the subpoenaed person's appearance at a deposition or to inspect and copy materials to which an objection has been made except pursuant to an order of the court. If objection is made, the party serving the subpoena may, upon notice to the subpoenaed person, move at any time for an order to compel the subpoenaed person's appearance at the deposition or the production of the materials designated in the subpoena. The motion shall be filed in the court in the county in which the deposition or production of materials is to occur.

(5) Motion to quash or modify subpoena. - A person commanded to appear at a trial, hearing, deposition, or to produce and permit the inspection and copying of records, books, papers, documents, electronically stored information, or other tangible things, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, may file a motion to quash or modify the subpoena. The court shall quash or modify the subpoena if the subpoenaed person demonstrates the existence of any of the reasons set forth in subdivision (3) of this subsection. The motion shall be filed in the court in the county in which the trial, hearing, deposition, or production of materials is to occur.

(6) Order to compel; expenses to comply with subpoena. - When a court enters an order compelling a deposition or the production of records, books, papers, documents, electronically stored information, or other tangible things, the order shall protect any person who is not a party or an agent of a party from significant expense resulting from complying with the subpoena. The court may order that the person to whom the subpoena is addressed will be reasonably compensated for the cost of producing the records, books, papers; documents, electronically stored information, or tangible things specified in the subpoena.

(7) Trade secrets; confidential information. - When a subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information, a court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or when the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship, the court may order a person to make an appearance or produce the materials only on specified conditions stated in the order.

(8) Order to quash; expenses. - When a court enters an order quashing or modifying the subpoena, the court may order the party on whose behalf the subpoena is issued to pay all or part of the subpoenaed person's reasonable expenses including attorney's fees.

**(d) Duties in Responding to Subpoena**

(1) Form of response. - A person responding to a subpoena to produce records, books, documents, electronically stored information, or tangible things shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

(2) Form of producing electronically stored information not specified. - If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it ordinarily is maintained or in a reasonably useable form or forms.

(3) Electronically stored information in only one form. - The person responding need not produce the same electronically stored information in more than one form.

(4) Inaccessible electronically stored information. - The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, after considering the limitations of Rule 26(b)(1a).The court may specify conditions for discovery, including requiring the party that seeks discovery from a nonparty to bear the costs of locating, preserving, collecting, and producing the electronically stored information involved.

(5) Specificity of objection. - When information subject to a subpoena is withheld on the objection that it is subject to protection as trial preparation materials, or that it is otherwise privileged, the objection shall be made with specificity and shall be supported by a description of the nature of the communications, records, books, papers, documents, electronically stored information, or other tangible things not produced, sufficient for the requesting party to contest the objection.

---

**INFORMATION FOR WITNESS**

NOTE: If you have any questions about being subpoenaed as a witness, you should contact the person named on Page One of this Subpoena in the box labeled "Name And Address Of Applicant Or Applicant's Attorney."

**DUTIES OF A WITNESS**
- Unless otherwise directed by the presiding judge, you must answer all questions asked when you are on the stand giving testimony.
- In answering questions, speak clearly and loudly enough to be heard.
- Your answers to questions must be truthful.
- If you are commanded to produce any items, you must bring them with you to court or to the deposition.
- You must continue to attend court until released by the court. You must continue to attend a deposition until the deposition is completed.

**BRIBING OR THREATENING A WITNESS**
It is a violation of State law for anyone to attempt to bribe, threaten, harass, or intimidate a witness. If anyone attempts to do any of these things concerning your involvement as a witness in a case, you should promptly report that to the district attorney or the presiding judge.

**WITNESS FEE**
A witness under subpoena and that appears in court to testify, is entitled to a small daily fee, and to travel expense reimbursement, if it is necessary to travel outside the county in order to testify. (The fee for an "expert witness" will be set by the presiding judge.) After you have been discharged as a witness, if you desire to collect the statutory fee, you should immediately contact the Clerk's office and certify your attendance as a witness so that you will be paid any amount due you.

AOC-G-100, Side Two, Rev. 2/18
© 2018 Administrative Office of the Courts

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

## EXHIBIT A

### *Definitions*

1.      "You" shall mean and refer to John F. Mitchell d/b/a Heirloom Advisors.

2.      As used herein, "Communications" or the like means the transmittal of any information, whether written, electronic or oral, in the form of facts, ideas, and inquiries or otherwise.

3.      As used herein, "Document" and "Documents" means all written, recorded or graphic matters whatsoever and all non-identical copies thereof, including but not limited to, papers, books, records, letters, photographs, tangible things, text messages, correspondence, communications, telegrams, cables, telex messages, memoranda, notes, notation, work papers, transcripts, minutes, reports, financial statements, bank statements, recordings of telephone or other conversations, statements, summaries, opinions, studies, analyses, evaluations, contracts, agreements, closing statements, jottings, agendas, bulletins, notices, announcements, advertisements, instructions, guidelines, charts, manuals, brochures, publications, schedules, lists, journals, statistical records, desk calendars, appointment books, diaries, lists, tabulations, newsletters, drafts, proofs, galleys, or other prepublication forms of materials, telephone list or indexes, computer printouts, data processing program libraries, data processing in-put or out-put, information stored electronically on disks, CD-ROMs, hard drives, microfilm, microfiche, books of account, records or invoices reflecting business operations, all records kept by electronic, photographic or mechanical means, any notes or drafts relating to any of the foregoing, and any other documents as defined in Rule 34 of the North Carolina Rules of Civil Procedure of any kind or character in Your possession, custody, control or to which You have access, or which You know exists.

4.      "Policies" shall mean and refer to any insurance policy or insurance contract procured or brokered by you which identifies any of the following as either an owner, insured, or beneficiary:

- o  Ralph L. Falls, Jr.
- o  Robark Properties, LLC
- o  Ralph L. Falls, III GST Trust
- o  Mary Cooper Falls Wing GST Trust
- o  Louise Falls Cone GST Trust
- o  John T. Bode, as Trustee
- o  Dianne Sellers
- o  Ben Staton (only policies of which he is a beneficiary are encompassed by this subpoena)
- o  Katherine Staton Chamberlain (only policies of which she is a beneficiary are encompassed by this subpoena)

### *Documents*

You have been subpoenaed to produce the following documents and things in Your possession at the offices of Johnston, Allison & Hord, P.A., 1065 E. Morehead Street, Charlotte, North Carolina, on or before <u>Thursday, August 25 , 2022 at 10:00 a.m.</u>

1. Copies of each of the Policies.

2. All beneficiary designations in Your file for each of the Policies.

3. All Communications in Your file associated with each of the Policies, including any Communications or inquiries received from any other person or entity related to the same.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Subpoena** has this date been served upon the persons named below by depositing a copy thereof in the United States mail, sufficient first-class postage prepaid, addressed as follows:

Elizabeth K. Arias
Jesse A. Schaefer
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
E-mail: Liz.Arias@wbd-us.com
E-mail: Jesse.Schaefer@wbd-us.com
*Co-Counsel for Mary Cooper Falls Wing*

Johnny M. Loper
Loper Law, PLLC
1212 Briar Patch Lane
Raleigh, North Carolina 27615-6901
E-mail: jloper@loper-law.com
*Co-Counsel for Mary Cooper Falls Wing*

Leslie C. Packer
Alex J. Hagan
Michelle A. Liguori
Ellis & Winters, LLP
4131 Parklake Avenue, Suite 400 (27612)
P.O. Box 33550
Raleigh, North Carolina 27636
E-mail: leslie.packer@elliswinters.com
E-mail: alex.hagan@elliswinters.com
E-mail: michelle.liguori@elliswinters.com
*Counsel for Toby Cone, Louise Falls Cone, Gillian Galls Cone, and Katharine Lenox Cone*

Walter E. Brock, Jr.
Young Moore and Henderson, P.A.
3101 Glenwood Avenue, Suite 200
P.O. Box 31627
Raleigh, North Carolina 27622
E-mail: Walter.Brock@youngmoorelaw.com
*Counsel for John T. Bode*

J. Mitchell Armbruster
James K. Dorsett, III
Eva Gullick Frongello
Smith Anderson Blount Dorsett Mitchell
& Jernigan, LLP
150 Fayetteville Street, Suite 2300
P.O. Box 2611
Raleigh, North Carolina 27602-2611
E-mail: marmbruster@smithlaw.com
E-mail: JDorsett@smithlaw.com
E-mail: efrongello@smithlaw.com
*Counsel for Goldman Sachs Trust Company, N.A., in its corporate capacity as Executor of the Estate of Ralph L. Falls, Jr. and as Trustee of the Ralph Lane Falls Revocable Declaration of Trust*

Alan W. Duncan
Allison Mullins
Hillary M. Kies
Mullins Duncan Harrell & Russell,
PLLC 300 North Greene Street, Suite
2000 Greensboro, North Carolina 27401
E-mail: aduncan@turningpointlit.com
E-mail: amullins@turningpointlit.com
E-mail: hkies@turningpointlit.com
*Counsel for Dianne C. Sellers*

Michael T. Medford
Manning, Fulton & Skinner, P.A.
3605 Glenwood Avenue, Suite 500
P.O. Box 20389
Raleigh, North Carolina 27619
E-mail: medford@manningfulton.com
*Counsel for University of North Carolina at Chapel Hill Foundation, Inc.*

3

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

This the 4th day of August, 2022.

JOHNSTON, ALLISON & HORD, P.A.

By: _____
David T. Lewis, N.C.S.B. # 29675
dlewis@jahlaw.com
Kimberly J. Kirk, N.C.S.B. # 44255
kkirk@jahlaw.com
1065 East Morehead Street
Charlotte, North Carolina 28204
*Counsel for Ralph L. Falls, III, individually a
nd on behalf of his minor children, M.E.F.,
L.L.F., and J.B.F.*

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

# JOHNSTON
# ALLISONHORD

1065 East Morehead Street
Charlotte, NC 28204

7016 0910 0000 6686 0240

John F. Mitchell d/b/a Heirloom Advisors
Attn: Records Custodian
1201 Edwards Mill Road, Suite 200
Raleigh, North Carolina 27607

27607-362550

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

START HERE.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

# EXHIBIT 5



**Ioannis (Ian) G. Conits**
A member of the South Carolina Bar
IConits@GWBlawfirm.com

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

November 7, 2023

**VIA E-MAIL AND CERTIFIED U.S. MAIL**
Northwestern Mutual
Attention: Christine Cowles
720 East Wisconsin Avenue, S632
Milwaukee, WI 53202-4797
Email: chriscowles@northwesternmutual.com

    **Re:    Northwestern Mutual Policy Nos. ███6513, ███0411, and ███2255**

Dear Ms. Cowles:

This law firm has been retained to represent Robark Properties, LLC (Robark). Robark owns three Northwestern Mutual life insurance policies bearing Policy Numbers ███6513, ███0411, and ███2255 (collectively, the Policies).

Despite repeated requests, Northwestern Mutual has refused to produce certain documents, communications and/or information to Robark concerning the Policies. Demand is hereby made against Northwestern Mutual to produce the documents,[1] communications[2] and information requested below to Robark by no later than **5:00 p.m. ET Tuesday, November 21, 2023**.

---

[1] "Document" or "documents" include[s], but is not limited to, the following: records; notes; summaries; schedules, calendars or planners contracts; agreements; invoices; orders; acknowledgements; diaries; reports; forecasts; appraisals; memoranda of telephone or in-person conversations by or with any person; any other memoranda, letters; telegrams; telexes; telefacsimiles; text messages; IMessages; electronic mail (e-mail); any other electronic messages; electronic bulletin boards and/or intranet or internet web sites of posits; any other communications prepared, drafted, received, or sent; tapes; transcripts; recordings; photographs; pictures; films; computer programs or data; or other graphic, symbolic, recorded, or written materials of any nature whatsoever. Any document that contains any comment, notation, addition, insertion, or marking of any kind which is not part of another document is to be considered a separate document.

[2] "Communication" or "communications" mean[s] any transmission, conveyance, or exchange of information, whether by written, oral, or other means, including, but not limited to, telephone calls, emails, text messages, internal messaging applications, oral conversations, and social media messages/posts. To the extent any response to the requests herein references an oral communication, please describe such communication in detail, including, the individuals who

Ms. Cowles
November 7, 2023
Page 2

Please provide:

1. A copy of each of the Policies. To the extent copies of the Policies are not maintained by Northwestern Mutual, please explain why and provide a replica of each of the Policies.

2. All documents, communications and/or information related to Robark and/or the Policies from 2013 through present. This request specifically, includes, but is not limited to, all communications between any representative, agent or employee of Northwestern Mutual and the following:

   a. John Bode and/or any attorney, agent, employee or other person acting on behalf of John Bode;
   b. Coleen Miller;
   c. Walter E. Brock, Jr. Brock and/or any other attorney, representative, or employee of Young Moore and Henderson, P.A.;
   d. Brodie Burwell and/or any other attorney, representative, or employee of Envisage Law (formerly known as Pinna Johnston & Burwell;
   e. John Mitchell;
   f. David Woody;
   g. Any representative, agent, or employee of Northwestern Mutual;
   h. Any representative, agent, or employee of Heirloom Advisors;
   i. Any representative, agent or employee of the "Condrey Network" through 2021 (email addresses include, but are not limited to, mike.condrey@nm.com);
   j. Any representative, agent or employee of the "Berry Network" from 2021 through present (email addresses include, but are not limited to, berry@nm.com);
   k. Any representative, agent or employee of Norton Collar Lund Lilley, PLLC;
   l. Any representative, agent or employee of Barham Guy Frelier, P.A.;
   m. Dianne Sellers; and
   n. Any representative, agent or employee of Fidelity Investments, including, but not limited to, Carrie Slaughter, Doug Clements and/or Kathy Sommer (formely Segodnia).

3. To the extent not requested by Request No. 2, all communications between a representative, agent or employee of Northwestern Mutual and a third party related in any way to Robark or the Policies.

4. To the extent not requested by Request No. 2, all communications between a representative, agent or employee of Heirloom Advisors and a third party related in any way to Robark or the Policies.

---

were parties to the communication, the date of the communication and the substance of the communication.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

Ms. Cowles
November 7, 2023
Page 3

5. To the extent not requested by Request No. 2, all communications between a representative, agent or employee of the "Condrey Network" and a third party related in any way to Robark or the Policies.

6. To the extent not requested by Request No. 2, all communications between a representative, agent or employee of the "Berry Network" and a third party related in any way to Robark or the Policies.

7. To the extent not requested by Request No. 2, all of Northwestern Mutual's internal communications related in any way to Robark or the Policies.

8. To the extent not requested by Request No. 2, all of Heirloom Advisor's internal communications related in any way to Robark or the Policies.

9. To the extent not requested by Request No. 2, all of the "Condrey Network's" internal communications related in any way to Robark or the Policies.

10. To the extent not requested by Request No. 2, all of the "Berry Network's" internal communications related in any way to Robark or the Policies.

11. All documents and communications concerning any compensation and/or commissions received by any individual, entity and/or financial representative associated with the Policies, including, but not limited to, John Mitchell, David Woody, and/or Heirloom Advisors.

12. All documents and communications regarding management of the Policies by John Mitchell and/or David Woody from 2013 through present. This includes, but is not limited to, all documents and communications concerning any changes of any personnel assigned to or associated with the Policies.

13. All communications related to the ISA closure and all information regarding who directed the ISA to be closed, when the directive to close the ISA was communicated, and who at Northwestern Mutual effectuated the closure.

14. All documents and communications related to use of Quik Pay Plus (QPP) for the Policies. Such documentation and information has been requested previously. On June 22, 2023, you responded to the following two questions:

(1) When was QPP initiated?
(2) Why was QPP initiated?
(3) Who initiated QPP?

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

Ms. Cowles
November 7, 2023
Page 4

*See* p. 2 of enclosed letter from M. Christine Cowles dated June 22, 2023. It does not appear, however, that you provided supporting documentation for your responses to such questions. Please provide any and all documents and communications you referred to in responding to the referenced questions. If any of those documents have already been produced, please separately identify each such document.

15. To the extent not provided in response to the above requests, please provide a complete explanation of what involvement, if any, David Woody has had with the Policies since 2013.

16. If not provided in response to the above requests or Robark's previous requests, please produce the complete file for the Policies from 2013 through present, including, but not limited to, all documents and communications concerning the Policies.

If the requested documents, communications and information are not received by the aforementioned deadline, Robark will take all action necessary against Northwestern Mutual to obtain what has been requested. Such action may include, but is not limited to, filing a lawsuit in a court of proper jurisdiction. We hope such action will not be necessary.

If Northwestern Mutual refuses to fully answer any request made herein in whole or in part, please set forth with specificity Northwestern Mutual's basis for its refusal to answer, including any claims of privilege, in sufficient detail to permit a court to adjudicate the validity of such refusal to answer and/or produce. Boilerplate objections that do not make clear what, if anything, Northwestern Mutual refuses to provide are not helpful. Such objections are also improper. *See Curtis v. Time Warner Ent.-Advance/Newhouse P'ship*, No. 3:12-CV-2370-JFA, 2013 WL 2099496, (D.S.C. May 14, 2013). Please identify separately each document or communication for which a privilege or other objection is claimed and ensure all necessary steps are taken by Northwestern Mutual to prevent the destruction, loss, concealment, or alteration of any such document or communication, as well as any other documents and communications in Northwestern Mutual's possession, custody, or control that relate in any way to the Policies.

To the extent it will assist, I would be glad to discuss any issues concerning the requests made herein prior to the aforementioned deadline for Northwestern Mutual to respond.

Sincerely,

GALLIVAN, WHITE & BOYD, P.A.

Ioannis (Ian) G. Conits
Direct Dial: 864-271-5432

Enclosure
cc: Robark Properties, LLC (via email)

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

# EXHIBIT 6


**Northwestern Mutual**

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2023 Dec 15 4:37 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

November 16, 2023

**M. Christine Cowles**
Assistant General Counsel
720 East Wisconsin Avenue, S632
Milwaukee, WI 53202-4797
414-665-1201 office
414-625-1201 fax
chriscowles@northwesternmutual.com

**VIA EMAIL ONLY (IConits@GWBlawfirm.com)**
Ioannis G. Conits
Gallivan White Boyd
55 Beattie Place
Suite 1200
Greenville, SC 29601

RE:    Northwestern Mutual Policy Nos. ███6513, ███0411, ███2255

Dear Mr. Conits:

We are in receipt of your letter of November 7, 2023, in which you reiterate your client's (and his previous counsel's) request for information concerning the above-referenced policies.

Given that you have my June 22 letter to Attorney Kirk, you know that we have already responded to the Subpoenas issued during the course of the North Carolina case that has since been dismissed. You also know that since 2020, your client has been provided with substantial information by Client Services here at our Home Office, and that in my response to Attorney Kirk, I provided additional information to her. Finally, you know that we declined to provide anything further.

Our position has not changed since my letter to Attorney Kirk. We will not be providing anything more with respect to the subject policies.

We reiterate – again – that if your client has any further *servicing* needs regarding the policies, he reach out to call the Northwestern Mutual Raleigh Office's Client Relations Center at 919.746.9919, or that he call our Home Office at 866.950.4644. Alternatively, he is welcome to find another Northwestern Mutual financial representative to assist him.

As I indicated to Attorney Kirk, for anything other than addressing policy servicing needs (which should be handled as noted), any future communications should be directed to me.

Very truly yours,

M. Christine Cowles

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

# EXHIBIT 7

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | THIRTEENTH JUDICIAL CIRCUIT |
| COUNTY OF GREENVILLE | ) | |
| | | |
| Robark Properties, LLC, | ) | Civil Action No. 2023-CP-23-06646 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPLY MEMORANDUM IN SUPPORT** |
| Northwestern Mutual Life Insurance | ) | **OF DEFENDANT'S MOTION FOR** |
| Company, | ) | **SUMMARY JUDGMENT AND MOTION** |
| | ) | **FOR PROTECTIVE ORDER** |
| Defendant. | ) | |
| | ) | |

On July 22, 2024 the Defendant, Northwestern Mutual Life Insurance Company ("Northwestern Mutual") filed a Motion for Summary Judgment asking the Court to dismiss the Plaintiff, Robark Properties, LLC's ("Plaintiff"), Complaint seeking declaratory judgment. Shortly thereafter on August 13, 2024, Northwestern Mutual filed a Motion for Protective Order after receiving Plaintiff's second set of discovery requests which asked for production of the very same documents and communications from Northwestern Mutual that prompted Plaintiff to file the present action seeking a declaration of entitlement to in the first place. Plaintiff filed its Motion to Compel on August 23, 2024. On Friday, January 24, 2025, Plaintiff filed a memorandum in support of its motion to compel and in opposition of Northwestern Mutual's motions ("Opposition"). An in-person hearing was held Monday, January 27, 2025, Plaintiff Robark was represented by Ian G. Conits, Esquire and Northwestern Mutual was represented by Yasmeen Ebbini, Esquire. At the conclusion of the parties' arguments at the hearing, the Court granted Northwestern Mutual's request to submit a supplemental briefing addressing certain points raised in Plaintiff's memorandum. Northwestern Mutual hereby submits the following memorandum in support of its motion for summary judgment and motion for protective order in this case.

1

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

## STANDARD OF REVIEW

Although a court considering summary judgment is to view the evidence in the light most favorable to the nonmoving party, "the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." *Brunson ex rel. Brunson v. Canal Ins. Co.*, 602 F. Supp. 2d 711, 713 (D.S.C. 2007). "Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot rest on mere allegations or denials contained in the pleadings. Rather, the non-moving party must come forward with specific facts showing there is a genuine issue for trial." *Hansen v. United Serv. Auto. Ass'n*, 350 S.C. 62, 67, 565 S.E.2d 114, 116 (Ct. App. 2002). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## ARGUMENT

In the plainest sense, Plaintiff asks this Court to issue a declaration finding that policy owners have an unfettered right to request any and all documents, communications or information concerning their policies from a life insurance company when neither policy language nor case law provides for such an entitlement. There is simply no genuine issue of material fact here relating to whether Northwestern Mutual has a duty or obligation to provide these materials to Plaintiff, or any other policy owner. Instead, Plaintiff's Opposition repeats the same broad, conclusory allegations pled in the complaint regarding Northwestern Mutuals "obligation" to produce these materials. However, Plaintiff fails to present **any** evidence or authority to support this claim. Northwestern Mutual maintains its position that the types of materials requested by Plaintiff are outside of the scope of documents it would otherwise provide customers in its standard company practice, and there is no evidence that such a position is unreasonable. The law supports only one

conclusion: Northwestern Mutual is not obligated nor subject to any recognized legal duty to provide Plaintiff with all the documents it seeks. Therefore, summary judgment should be granted in Northwestern Mutual's favor.

**I.      Plaintiff has failed to prove any right or entitlement to the requested documents to obtain Declaratory Judgment.**

Under the Declaratory Judgment Act, a party whose rights, status, or other legal relations are affected by a contract may seek a court's determination of any question of construction or validity of the contract and obtain a declaration of the party's rights, status, or other legal relations thereunder. *Graham v. State Farm Mut. Auto. Ins. Co.*, 319 S.C. 69, 71, 459 S.E.2d 844, 845 (1995); S.C. Code Ann. § 15–53–30. To state a cause of action under the Declaratory Judgment Act, a party must demonstrate a justiciable controversy. "A justiciable controversy exists when a concrete issue is present, there is a definite assertion of legal rights and a positive legal duty which is denied by the adverse party." *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 16, 567 S.E.2d 881, 889 (Ct. App. 2002) (emphasis added). "Where a complaint is *devoid of allegations* which are s*ufficient to establish the existence of a right in plaintiff arising out of the matters alleged*, a cause of action for declaratory judgment is not stated," and the complaint is subject to dismissal. *Plenge v. Russell*, 236 S.C. 473, 486, 115 S.E.2d 177, 183 (1960) (finding the complaint contained no "assertion of legal rights and a positive legal duty" to support declaratory judgment action) (emphasis added).

On December 15, 2023, Plaintiff filed the present action for declaratory judgment after Northwestern Mutual declined to produce all of the documents and communications requested by Plaintiff in its November 7, 2023 letter. (*See* Pl.'s Am. Compl., Exhibit 3.) In support of the request for declaratory judgment, Plaintiff pled that it "requested documents, communications and information" from Northwestern Mutual concerning the policies and that Northwestern Mutual

3

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

"refused to provide all the documents, communications, and information requested." (Am. Compl. ¶¶ 29, 30.) The complaint further states the controversy underlying the cause of action is "whether the documents, communications and information requested by Plaintiff should be provided by Northwestern Mutual" in support of Plaintiff's requested entitlement to a declaration that "Northwestern Mutual is obligated to produce the documents, communication and information requested by Plaintiff." (*Id.* ¶¶ 31, 32.) The prayer for relief concludes by reiterating the same limited right which forms the singular issue that Plaintiff has asked this court to consider for declaratory judgment: "that [Plaintiff] is entitled to all the documents, communications and information it has requested from Northwestern Mutual." (*Id.* ¶ A.)

None of Plaintiff's allegations establish the existence of a right to the requested documents arising out of the matters alleged. Instead, based upon the mere reasoning that it is the owner of the policies, Plaintiff makes the broad contention that Northwestern Mutual owes a duty and obligation to produce all documents, communications and information to policy owners, like Plaintiff, upon request.[1] In the Motion for Summary Judgment, Northwestern Mutual presented arguments, supporting evidence, and legal authority setting forth why Plaintiff's declaratory judgment action fails as a matter of law and should be dismissed. (Mot. Summ. J., Part IV.)

---

[1] Plaintiff alleges the purpose of the requests to Northwestern Mutual is so Plaintiff's new management can "gain a better understanding of the policies and their respective histories," including, but not limited to "decision(s) … to reduce premium amounts for the Policies (which has ultimately resulted in a significant reduction of the cash value of the Policies)." (Opp'n at 1.) Northwestern Mutual has already provided Plaintiff with all documents reflecting the outcome of any changes to servicing the policies, including: policy changes; dividend changes; beneficiary changes; premiums due and premium payments; the closure of insurance service accounts; policy illustrations; and annual policy statements, among others. (*See* Cowles Aff. ¶¶ 10, 16.) The formal documentation of any policy changes already provided to Plaintiff are more than sufficient for new management to "gain a better understanding" of the policies' histories. Additionally, Plaintiff's new management can contact previous management to inquire about the decision making which resulted in any policy changes.

4

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

Plaintiff has additionally failed to prove the existence of a positive legal duty requiring Northwestern Mutual to provide Plaintiff with the documents and information it requested. It is Plaintiff's burden to establish this duty for a declaratory judgment action. *See Dantzler v. Callison*, 227 S.C. 317, 321, 88 S.E.2d 64, 66 (1955) (a court is only concerned with whether the plaintiff is entitled to a declaration of rights with respect to the matters alleged because "[t]he test of sufficiency of such a complaint is not whether it shows that the plaintiff is entitled to a declaration of rights in accordance with his theory, but whether he is entitled to a declaration of rights at all.") (quoting *Foster v. Foster*, 226 S.C. 130, 132, 83 S.E.2d 752, 753 (1954) (if the disputed rights serving as the subject of a declaratory judgment action are "so clear that there is no uncertainty or dispute as to them," then dismissal on that ground is appropriate)). Plaintiff's belief that Northwestern Mutual somehow owes it a duty to produce documents is unsubstantiated and refuted by existing authority. Unsupported conjecture cannot not create a genuine issue of material fact; therefore, summary judgment should be granted in favor of Northwestern Mutual.

## A. The Policy does not provide an unfettered right to documents.

Legal duties do not exist in a vacuum. To impose an obligation on a party to act or engage in certain conduct, that obligation must be rooted in a recognized legal duty. Simply demanding that certain actions can or should be undertaken, absent a source of authority for the demand, lacks the necessary influence to assure compliance and impose accountability.

Plaintiff takes the mistaken position that if Northwestern Mutual, or any other life insurer, issues a policy to a customer then it is unconditionally required to provide a customer with near unlimited access to a plethora of documents and communications upon request regardless of purpose or any limitations contained in the language of the contract between the parties. "An affirmative legal duty exists only if created by statute, contract, relationship, status, property

interest, or some other special circumstance." *Hendricks v. Clemson Univ.*, 353 S.C. 449, 578 S.E.2d 711, 714 (2003). The existence of a duty owed is a question of law for the courts. *Houck v. State Farm Fire & Cas. Ins. Co.*, 366 S.C. 7, 11–12, 620 S.E.2d 326, 329 (2005).

It is well established that insurance policies are subject to general rules of contract construction. *See Standard Fire Ins. Co. v. Marine Contracting & Towing Co.*, 301 S.C. 418, 392 S.E.2d 460 (1990). "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning." *Id.* (quoting *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008). An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. *South Carolina Ins. Co. v. White*, 301 S.C. 133, 390 S.E.2d 471 (Ct. App. 1990); *Quinn v. State Farm Mut. Auto. Ins. Co.*, 238 S.C. 301, 304, 120 S.E.2d 15, 16 (1961) ("The Court has no power to interpolate into the agreement between the insurer and the insured a condition or stipulation not contemplated either by the law or by the contract between the parties.").

It is undisputed that Plaintiff's policies create no duty or obligation for Northwestern Mutual to provide Plaintiff with all of the information it requested. Similarly, South Carolina's Insurance Code and Administrative Code chapters governing the conduct of life insurance companies contain no provisions or regulations requiring a life insurance company to provide policyholders with the categories of documents sought by Plaintiff, including a life insurance company's internal communications, communications with agents, and in Plaintiff's case, communications with approximately nineteen different third-party individuals and entities over an eleven year period. (*See* Pl.'s Am. Compl., Exhibit 3.)  Finally, even the South Carolina Department of Insurance does not impose or require life insurance companies to engage in that level of recordkeeping. Therefore, absent any evidence of an affirmative legal duty on the part of

6

Northwestern Mutual to provide this information, Plaintiff's declaratory judgment action must be dismissed, and summary judgment granted for Northwestern Mutual.

### B.  Plaintiff's fiduciary relationship argument fails as a matter of law.

In attempting to identify a legal duty to survive summary judgment Plaintiff's Opposition introduces the entirely new theory that Plaintiff and Northwestern Mutual have a fiduciary relationship which "inherently requires" Northwestern Mutual to produce the requested documents. (Opp'n at 7.)  No allegation of a fiduciary relationship was pled in the complaint, or otherwise referenced by Plaintiff prior to its Opposition. Ultimately, this claim is nothing but more unsubstantiated conjecture by Plaintiff.

Under South Carolina law, "[a] confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one imposing the confidence." *Brown v. Pearson*, 326 S.C. 409, 421, 483 S.E.2d 477, 483 (Ct. App. 1997).  As it relates to the nature of the relationship between a life insurance company and a policyholder, "a fiduciary relationship is not established by the mere fact of an insurance relationship between the parties, and something more than that is required to create a fiduciary relationship to the insured." Couch on Insurance § 198:7 (3d ed. 2024).[2]

---

[2] *See also Moses v. Mfrs. Life Ins. Co.*, 298 F. Supp. 321 (D.S.C. 1968) (holding a claim of fiduciary relationship cannot rest upon the mere relationship of insurer and insured); *Brown v. Green Tree Fin. Servicing Corp.*, No. C. A. 2:06-2777-PMD, 2008 WL 2157120, at *11 (D.S.C. May 19, 2008) (same); *Great Am. Ins. Co. v. Mills*, No. CIV.A.4:06-CV-01971R, 2008 WL 2250256 (D.S.C. May 29, 2008) (noting "the court is reluctant to recognize a fiduciary relationship between an insurance company and an insured where South Carolina courts have not done so."); *Am. Mod. Select Ins. Co. v. McAnulty*, No. 8:21-CV-00295-JD, 2022 WL 18587808, at *4 (D.S.C. May 3, 2022) (holding that insurer cannot have breached any fiduciary duty owed to defendants under South Carolina law simply by virtue of the defendants' having applied for insurance with the company).

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

Plaintiff has pointed to no South Carolina law finding that a life insurance company has a general fiduciary relationship with a policyholder. In *Pitts v. Jackson Nat. Life Ins. Co.*, 352 S.C. 319, 574 S.E.2d 502 (Ct. App. 2002), the Court of Appeals declined to find a fiduciary relationship between a life insurer and insured, stating that although the relationship between an insurance company and an insured has, at times, been characterized as "special," that has only occurred in the limited posture of an insured's claim of bad faith refusal to pay benefits due under an insurance contract. The court clarified that under those factual circumstances, a special relationship would arise strictly "based on the ***insurer's established contractual obligations***" to pay benefits under a policy. *Id.* at 330, 574 S.E.2d at 508 (emphasis added). Therefore, with regards to life insurance companies, the existence of any duty or relationship is predicated entirely on the parties' existing contractual responsibilities.

The only evidence Plaintiff provides in support of the fiduciary relationship theory is that Northwestern Mutual "through its Chairman and CEO," allegedly "represented to the public, including [Plaintiff]" that doing what's best for Northwestern Mutual's policyowners is the "'one consideration' that drives 'all [Northwestern Mutual's] decisions.'"[3] (Opp'n at 8.) And that Northwestern Mutual undertook an "advisory role" because it "assigned a person" marketed as a Wealth Management Advisor and Private Wealth Advisor to be the financial representative for Plaintiff's life insurance policies. (*Id.*) According to Plaintiff, "[t]his is the foundation upon which [Plaintiff] entrusted that Northwestern Mutual would not act on its own behalf but in the interest

---

[3] Plaintiff's claim that Northwestern Mutual's CEO and Chairman made "representations to the public," refers to the statements contained in a generic marketing letter from the CEO and Chairman included at the beginning of Northwestern Mutual's 2023 Annual Report, attached as Exhibit A to Plaintiff's Opposition.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

of [Plaintiff]" with regards to Plaintiff's policies. [4] (*Id.*). Even under a generous assessment, the "facts and circumstances" provided by Plaintiff to serve as the foundation for its purported entrustment are wholly insufficient. "A fiduciary relationship cannot be established by the unilateral action of one party. The other party must have actually accepted or induced the confidence placed in him." *Steele v. Victory Sav. Bank*, 295 S.C. 290, 295, 368 S.E.2d 91, 94 (Ct. App. 1988).

In the realm of fiduciary relationships, Plaintiff fails to point to any case law holding that a fiduciary has a duty to produce all documents in its possession related to the other party. A fiduciary duty is a duty to in good faith act in the best interests of the other – that does not mean providing unfettered access to all of the fiduciary's files. Critically, Plaintiff has cited to no policy language or case law to support the assertion that a fiduciary relationship existed with Northwestern Mutual, or that South Carolina law recognizes a general fiduciary relationship between life insurance companies and policyholders. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.") Because the evidence and case law do not support the existence of a fiduciary relationship under the circumstances presented in this case, Plaintiff's theory necessarily fails and summary judgment in favor of Northwestern Mutual is warranted.

---

[4] Plaintiff provides no evidence that a life insurance entity has a fiduciary relationship with the policy holder. Instead, Plaintiff pulled a screenshot of a separate webpage for a separate subsidiary's securities line of business. Which has nothing to do with the life insurance line of business. The securities business and the life insurance business operate in completely different arenas. While the securities business may have fiduciary relationships, in the life insurance arena there is no fiduciary relationship. So even assuming, *in arguendo*, that Plaintiff did have a fiduciary relationship with a financial advisor, that advisor is still affiliated as an independent contractor of a subsidiary corporation. That securities business arrangement does not impute any special duties to the life insurance company line of business.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

II.    **Plaintiff's desire to obtain discovery on issues irrelevant to the central question for declaratory judgment action does not defeat summary judgment.**

Summary judgment is appropriate when it is clear that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Sullivan Co. v. New Swirl, Inc.*, 313 S.C. 34, 36, 437 S.E.2d 30, 31 (1993). A party claiming summary judgment is premature because they have not been provided a full and fair opportunity to conduct discovery must advance a good reason why the time was insufficient under the facts of the case, and why further discovery would uncover additional relevant evidence and create a genuine issue of material fact. *Guinan v. Tenet Healthsystems of Hilton Head, Inc.*, 383 S.C. 48, 54-55, 677 S.E.2d 32, 36 (Ct. App. 2009). The nonmoving party must demonstrate the likelihood that further discovery will uncover additional relevant evidence and that the party is not merely engaged in a "fishing expedition." *Dawkins v. Fields*, 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003).

Plaintiff claims that summary judgment is premature because it has not had a "full and fair opportunity" to complete discovery in this action. (Opp'n at 6.) But the only cause of action in this case is for declaratory judgment on this issue of whether Plaintiff has a legal right to receive the documents it requested from Northwestern Mutual. No additional discovery is needed for the Court's to determine the narrow question of whether a positive legal duty exists here. Consistent with Plaintiff's history of overreaching for information, Plaintiff highlights multiple irrelevant and ancillary issues it seeks discovery on, including:

- "Northwestern Mutual's conduct in this action has only raised more questions, which of course, call for more discovery" (Opp'n at 2.);
- "Northwestern Mutual, through Michell (and possibly others who may be discovered during discovery), . . . " (*Id.* at 7.);
- "Robark is entitled to discovery regarding the information Northwestern Mutual provided regarding QPP" (*Id.*);
- "Robark is entitled to discovery from Northwestern Mutual on [the issue of fiduciary relationship] given that there appears to be a dispute" (*Id.* at 14);

10

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

- "Northwestern Mutual contends that 'policy replica' is a substitute for the *actual* Policy. Further discovery is needed to evaluate that contention" (*Id.*);
- "Robark is entitled to discover how, when and why [decisions by management to reduce premium amounts] was/were made" (*Id.*);

Again, the complaint contains a singular cause of action for declaratory judgment on the specific question of whether an existing legal duty requires Northwestern Mutual to produce the documents, communications and information that Plaintiff previously requested. No more, no less. Any discovery outside of that scope would be irrelevant for purposes of the subject matter of this action. Additionally courts disfavor requests for "meta-discovery" or discovery about discovery and closely scrutinize such requests for danger of irrelevance to the action and extending what can be a costly and time-consuming discovery process ad infinitum. *See e.g., Koppers Performance Chemicals, Inc. v. Travelers Indem. Co.*, 638 F. Supp. 3d 610, 615 (D.S.C. 2022).

III. **Northwestern Mutual did not waive its objections to Plaintiff's second set of discovery requests.**

Further, no authority supports the position that Northwestern Mutual waived the ability to seek protection for Plaintiff's second set of discovery requests merely because it responded to the first set of requests. (*See* Opp'n at 9-10.) Under Rule 26(c), SCRCP, the right to seek a protective order is preserved and can be invoked at any time during the discovery process if a party believes that requested discovery is unduly burdensome, oppressive, or otherwise objectionable. Contrary to Plaintiff's contention, the rules impose no condition which requires a party to waive its right to seek a protective order simply by complying with earlier discovery requests.

Northwestern Mutual's decision to file a dispositive motion and motion for protective order in response to Plaintiff's second set of discovery requests was valid. *See Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 109, 410 S.E.2d 537, 542 (1991) (noting that a motion for protective order can be an appropriate response by a party upon whom requests are served). Courts routinely stay

11

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

pre-trial obligations, including discovery, when a dispositive motion is pending. *See, e.g., Chaudry v. Mobil Oil Corp.*, 186 F.3d 502, 505 (4th Cir. 1999); *Cobin v. U.S.*, C.A. No. 6:04-cv-2455, 2005 WL 2200550, at *6 (D.S.C. June 22, 2005).

Plaintiff wrongly asserts that Northwestern Mutual's objections in its motion for protective order on the second set of discovery requests are barred because Northwestern Mutual did not raise the same objections to Plaintiff's first set of requests. (Opp'n at 9-10.) Plaintiff's waiver argument is premised entirely on Plaintiff's statement that the declaration sought in the amended complaint included an entitlement to a copy of the policies or policy replicas, and therefore, Northwestern Mutual cannot object that Plaintiff is attempting to use discovery to obtain the documents it sought by initiating the action. (Opp'n at 9.) Conveniently, Plaintiff ignores the fact that its first and second discovery requests asked for fundamentally different documents. Plaintiff's first request only asked for copies of the policies or policy replicas. (*Id.* at 9.) It is the standard practice of Northwestern Mutual to provide policy replicas to life insurance policy owners if requested. (*See* Cowles Aff. ¶ 16.) Northwestern Mutual provided policy replicas for all three policies to Ralph Falls, III and his counsel before the complaint was filed. (Mot. Summ. J. at 6.) Plaintiff is well aware that copies of the policies or policy replicas are not the reason it filed this lawsuit. Plaintiff filed this lawsuit with the explicit goal of obtaining the documents, communications and information requested in the November 7, 2023 letter that Northwestern Mutual refused to provide. (Opp'n at 2.)

In its opposition, Plaintiff makes no attempt to deny that the second set of discovery requests asked Northwestern Mutual to produce the very same lineup of documents and communications Plaintiff filed this action to obtain an entitlement to in the first place. Rather than acknowledging the improper use of discovery, Plaintiff instead focuses on why a blanket waiver

12

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878
ELECTRONICALLY FILED - 2025 Feb 03 3:20 PM - GREENVILLE - COMMON PLEAS - CASE#2023CP2306646

of any and all objections by Northwestern Mutual should apply. A party cannot be allowed to file suit for a declaration that they are entitled to something, and then send discovery requests asking for those very same documents before judgment is rendered. Doing so is an improper end-around the Plaintiff's initial obligation to show it has a right that entitles it to receive the documents sought. Because the only claim raised in this action is whether Plaintiff is entitled to the documents at all, Plaintiff is obligated to first obtain a judgment from the court on its action.

## CONCLUSION

Based on the foregoing reasons, Northwestern Mutual respectfully requests that the Court grant its Motion for Summary Judgment and Motion for Protective Order, deny Plaintiff's Motion to Compel, and enter an Order dismissing this action.

NELSON MULLINS RILEY & SCARBOROUGH LLP


By: _s/ Yasmeen Ebbini_
    D. Larry Kristinik
    S.C. Bar No. 64983
    E-Mail: larry.kristinik@nelsonmullins.com
    Yasmeen Ebbini
    S.C. Bar No. 104681
    E-Mail: yasmeen.ebbini@nelsonmullins.com
    1320 Main Street / 17th Floor
    Post Office Box 11070 (29211-1070)
    Columbia, SC 29201
    (803) 799-2000

*Attorneys for Northwestern Mutual Life Insurance Company*

Columbia, South Carolina
February 3, 2025

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

# EXHIBIT 8



# CODE OF ETHICS AND STANDARDS OF CONDUCT

EFFECTIVE DATE: OCTOBER 1, 2019

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

March 2018, as revised in November 2018

# TABLE OF CONTENTS

PREAMBLE .................................................................................................................................................................3

CODE OF ETHICS ....................................................................................................................................................3

STANDARDS OF CONDUCT ...............................................................................................................................3

A.  DUTIES OWED TO CLIENTS .....................................................................................................................3
    1.  Fiduciary Duty .................................................................................................................................3
    2.  Integrity .............................................................................................................................................3
    3.  Competence ....................................................................................................................................4
    4.  Diligence ..........................................................................................................................................4
    5.  Disclose and Manage Conflicts of Interest ..........................................................................4
    6.  Sound and Objective Professional Judgment .....................................................................4
    7.  Professionalism ...............................................................................................................................5
    8.  Comply with the Law ....................................................................................................................5
    9.  Confidentiality and Privacy ........................................................................................................5
    10. Provide Information to a Client ..................................................................................................6
    11. Duties When Communicating with a Client ..........................................................................6
    12. Duties When Representing Compensation Method ...........................................................7
    13. Duties When Recommending, Engaging, and Working with Additional Persons .........8
    14. Duties When Selecting, Using, and Recommending Technology ....................................8
    15. Refrain from Borrowing or Lending Money and Commingling Financial Assets .........8

B.  FINANCIAL PLANNING AND APPLICATION OF THE PRACTICE STANDARDS FOR THE FINANCIAL PLANNING PROCESS .....9
    1.  Financial Planning Definition ....................................................................................................9
    2.  Examples of Relevant Elements of the Client's Personal and Financial Circumstances .........9
    3.  Application of Practice Standards ...........................................................................................9
    4.  Integration Factors ........................................................................................................................9
    5.  CFP Board Evaluation ..................................................................................................................9
    6.  No Client Agreement to Engage for Financial Planning ....................................................9

C.  PRACTICE STANDARDS FOR THE FINANCIAL PLANNING PROCESS ...................................10
    1.  Understanding the Client's Personal and Financial Circumstances .............................10
    2.  Identifying and Selecting Goals .............................................................................................10
    3.  Analyzing the Client's Current Course of Action and Potential Alternative Course(s) of Action ...........10
    4.  Developing the Financial Planning Recommendation(s) ................................................10
    5.  Presenting the Financial Planning Recommendation(s) ..................................................11
    6.  Implementing the Financial Planning Recommendation(s) ............................................11
    7.  Monitoring Progress and Updating .......................................................................................11

D.  DUTIES OWED TO FIRMS AND SUBORDINATES ..........................................................................12
    1.  Use Reasonable Care When Supervising ............................................................................12
    2.  Comply with Lawful Objectives of CFP® Professional's Firm .........................................12
    3.  Provide Notice of Public Discipline .......................................................................................12

E.  DUTIES OWED TO CFP BOARD .............................................................................................................12
    1.  Definitions ......................................................................................................................................12
    2.  Refrain from Adverse Conduct ...............................................................................................13
    3.  Reporting ........................................................................................................................................13
    4.  Provide Narrative Statement ...................................................................................................14
    5.  Cooperation ..................................................................................................................................14
    6.  Compliance with *Terms and Conditions of Certification and Trademark License* ....14

F.  PROHIBITION ON CIRCUMVENTION ...................................................................................................14

GLOSSARY .............................................................................................................................................................14

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

# PREAMBLE

CFP Board's *Code of Ethics and Standards of Conduct* reflects the commitment that all CFP® professionals make to high standards of competency and ethics. CFP Board's *Code and Standards* benefits and protects the public, provides standards for delivering financial planning, and advances financial planning as a distinct and valuable profession. Compliance with the *Code and Standards* is a requirement of CFP® certification that is critical to the integrity of the CFP® marks. Violations of the *Code and Standards* may subject a CFP® professional to discipline.

# CODE OF ETHICS

A CFP® professional must:

1.  Act with honesty, integrity, competence, and diligence.

2.  Act in the client's best interests.

3.  Exercise due care.

4.  Avoid or disclose and manage conflicts of interest.

5.  Maintain the confidentiality and protect the privacy of client information.

6.  Act in a manner that reflects positively on the financial planning profession and CFP® certification.

# STANDARDS OF CONDUCT

## A. DUTIES OWED TO CLIENTS

### 1. FIDUCIARY DUTY

At all times when providing Financial Advice to a Client, a CFP® professional must act as a fiduciary, and therefore, act in the best interests of the Client. The following duties must be fulfilled:

a.  **Duty of Loyalty.** A CFP® professional must:

  i.  Place the interests of the Client above the interests of the CFP® professional and the CFP® Professional's Firm;

  ii.  Avoid Conflicts of Interest, or fully disclose Material Conflicts of Interest to the Client, obtain the Client's informed consent, and properly manage the conflict; and

  iii.  Act without regard to the financial or other interests of the CFP® professional, the CFP® Professional's Firm, or any individual or entity other than the Client, which means that a CFP® professional acting under a Conflict of Interest continues to have a duty to act in the best interests of the Client and place the Client's interests above the CFP® professional's.

b.  **Duty of Care.** A CFP® professional must act with the care, skill, prudence, and diligence that a prudent professional would exercise in light of the Client's goals, risk tolerance, objectives, and financial and personal circumstances.

c.  **Duty to Follow Client Instructions.** A CFP® professional must comply with all objectives, policies, restrictions, and other terms of the Engagement and all reasonable and lawful directions of the Client.

### 2. INTEGRITY

a.  A CFP® professional must perform Professional Services with integrity. Integrity demands honesty and candor, which may not be subordinated to personal gain or advantage. Allowance may be made for innocent error and legitimate differences of opinion, but integrity cannot co-exist with deceit or subordination of principle.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

b. A CFP® professional may not, directly or indirectly, in the conduct of Professional Services:

i. Employ any device, scheme, or artifice to defraud;

ii. Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

iii. Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

## 3. COMPETENCE

A CFP® professional must provide Professional Services with competence, which means with relevant knowledge and skill to apply that knowledge. When the CFP® professional is not sufficiently competent in a particular area to provide the Professional Services required under the Engagement, the CFP® professional must gain competence, obtain the assistance of a competent professional, limit or terminate the Engagement, and/or refer the Client to a competent professional. The CFP® professional shall describe to the Client any requested Professional Services that the CFP® professional will not be providing.

## 4. DILIGENCE

A CFP® professional must provide Professional Services, including responding to reasonable Client inquiries, in a timely and thorough manner.

## 5. DISCLOSE AND MANAGE CONFLICTS OF INTEREST

a. **Disclose Conflicts.** When providing Financial Advice, a CFP® professional must make full disclosure of all Material Conflicts of Interest with the CFP® professional's Client that could affect the professional relationship. This obligation requires the CFP® professional to provide the Client with sufficiently specific facts so that a reasonable Client would be able to understand the CFP® professional's Material Conflicts of Interest and the business practices that give rise to the conflicts, and give informed consent to such conflicts or reject them. A sincere belief by a CFP® professional with a Material Conflict of Interest that he or she is acting in the best interests of the Client is insufficient to excuse failure to make full disclosure.

i. A CFP® professional must make full disclosure and obtain the consent of the Client before providing any Financial Advice regarding which the CFP® professional has a Material Conflict of Interest.

ii. In determining whether the disclosure about a Material Conflict of Interest provided to the Client was sufficient to infer that a Client has consented to a Material Conflict of Interest, CFP Board will evaluate whether a reasonable Client receiving the disclosure would have understood the conflict and how it could affect the advice the Client will receive from the CFP® professional. The greater the potential harm the conflict presents to the Client, and the more significantly a business practice that gives rise to the conflict departs from commonly accepted practices among CFP® professionals, the less likely it is that CFP Board will infer informed consent absent clear evidence of informed consent. Ambiguity in the disclosure provided to the Client will be interpreted in favor of the Client.

iii. Evidence of oral disclosure of a conflict will be given such weight as CFP Board in its judgment deems appropriate. Written consent to a conflict is not required.

b. **Manage Conflicts.** A CFP® professional must adopt and follow business practices reasonably designed to prevent Material Conflicts of Interest from compromising the CFP® professional's ability to act in the Client's best interests.

## 6. SOUND AND OBJECTIVE PROFESSIONAL JUDGMENT

A CFP® professional must exercise professional judgment on behalf of the Client that is not subordinated to the interest of the CFP® professional or others. A CFP® professional may not solicit or accept any gift, gratuity, entertainment, non-cash compensation, or other consideration that reasonably could be expected to compromise the CFP® professional's objectivity.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

**7. PROFESSIONALISM**

A CFP® professional must treat Clients, prospective Clients, fellow professionals, and others with dignity, courtesy, and respect.

**8. COMPLY WITH THE LAW**

a. A CFP® professional must comply with the laws, rules, and regulations governing Professional Services.

b. A CFP® professional may not intentionally or recklessly participate or assist in another person's violation of these *Standards* or the laws, rules, or regulations governing Professional Services.

**9. CONFIDENTIALITY AND PRIVACY**

a. A CFP® professional must keep confidential and may not disclose any non-public personal information about any prospective, current, or former Client ("client"), except that the CFP® professional may disclose information:

   i. For ordinary business purposes:

     a) With the client's consent, so long as the client has not withdrawn the consent;

     b) To a CFP® Professional's Firm or other persons with whom the CFP® professional is providing services to or for the client, when necessary to perform those services;

     c) As necessary to provide information to the CFP® professional's attorneys, accountants, and auditors; and

     d) To a person acting in a representative capacity on behalf of the client;

   ii. For legal and enforcement purposes:

     a) To law enforcement authorities concerning suspected unlawful activities, to the extent permitted by the law;

     b) As required to comply with federal, state, or local law;

     c) As required to comply with a properly authorized civil, criminal, or regulatory investigation or examination, or subpoena or summons, by a governmental authority;

     d) As necessary to defend against allegations of wrongdoing made by a governmental authority;

     e) As necessary to present a civil claim against, or defend against a civil claim raised by, a client;

     f) As required to comply with a request from CFP Board concerning an investigation or adjudication; and

     g) As necessary to provide information to professional organizations that are assessing the CFP® professional's compliance with professional standards.

b. A CFP® professional may not use any non-public personal information about a client for his or her direct or indirect personal benefit, whether or not it causes detriment to the client, unless the client consents.

c. A CFP® professional, either directly or through the CFP® Professional's Firm, must take reasonable steps to protect the security of non-public personal information about any client, including the security of information stored physically or electronically, from unauthorized access that could result in harm or inconvenience to the client.

d. A CFP® professional, either directly or through the CFP® Professional's Firm, must adopt and implement policies regarding the protection, handling, and sharing of a client's non-public personal information and must provide a client with written notice of those policies at the time of the Engagement and thereafter not less than annually (at least once in any 12-month period) unless (i) the CFP® professional's policies have not changed since the last notice sent to a client; and (ii) the CFP® professional does not disclose non-public personal information other than as permitted without a client's consent.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

5

e.  A CFP® professional shall be deemed to comply with this Section if the CFP® Professional's Firm is subject to, and the CFP® professional complies with, Regulation S-P under the federal securities laws or substantially equivalent federal or state laws or rules.

## 10. PROVIDE INFORMATION TO A CLIENT

a.  **When Providing Financial Advice.** When providing or agreeing to provide Financial Advice that does not require Financial Planning in accordance with the Practice Standards, a CFP® professional must provide the following information to the Client, prior to or at the time of the Engagement, and document that the information has been provided to the Client:

   i.   A description of the services and products to be provided;

   ii.  How the Client pays for the products and services, and a description of the additional types of costs that the Client may incur, including product management fees, surrender charges, and sales loads;

   iii. How the CFP® professional, the CFP® Professional's Firm, and any Related Party are compensated for providing the products and services;

   iv.  The existence of any public discipline or bankruptcy, and the location(s), if any, of the webpages of all relevant public websites of any governmental authority, self-regulatory organization, or professional organization that sets forth the CFP® professional's public disciplinary history or any personal bankruptcy or business bankruptcy where the CFP® professional was a Control Person;

   v.   The information required under Section A.5.a. (Conflict of Interest Disclosure);

   vi.  The information required under Section A.9.d. (Written Notice Regarding Non-Public Personal Information);

   vii. The information required under Section A.13.a.ii. (Disclosure of Economic Benefit for Referral or Engagement of Additional Persons); and

   viii. Any other information about the CFP® professional or the CFP® Professional's Firm that is Material to a Client's decision to engage or continue to engage the CFP® professional or the CFP® Professional's Firm.

b.  **When Providing Financial Planning.** When providing or required to provide Financial Planning in accordance with the Practice Standards, a CFP® professional must provide the following information to the Client, prior to or at the time of the Engagement, in one or more written documents:

   i.   The information required to be provided in Sections A.10.a.i.-iv. and vi.-viii.; and

   ii.  The terms of the Engagement between the Client and the CFP® professional or the CFP® Professional's Firm, including the Scope of Engagement and any limitations, the period(s) during which the services will be provided, and the Client's responsibilities. A CFP® professional is responsible for implementing, monitoring, and updating the Financial Planning recommendation(s) unless specifically excluded from the Scope of Engagement.

c.  **Updating Information.** A CFP® professional has an ongoing obligation to provide to the Client any information that is a Material change or update to the information required to be provided to the Client. Material changes and updates to public disciplinary history or bankruptcy information must be disclosed to the Client within ninety (90) days, together with the location(s) of the relevant webpages.

## 11. DUTIES WHEN COMMUNICATING WITH A CLIENT

A CFP® professional must provide a Client with accurate information, in accordance with the Engagement, and in response to reasonable Client requests, in a manner and format that a Client reasonably may be expected to understand.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

## 12. DUTIES WHEN REPRESENTING COMPENSATION METHOD

A CFP® professional may not make false or misleading representations regarding the CFP® professional's or the CFP® Professional's Firm's method(s) of compensation.

    a. **Specific Representations**

        i. **Fee-Only.** A CFP® professional may represent his or her or the CFP® Professional's Firm's compensation method as "fee-only" only if:

            a) The CFP® professional and the CFP® Professional's Firm receive no Sales-Related Compensation; and

            b) Related Parties receive no Sales-Related Compensation in connection with any Professional Services the CFP® professional or the CFP® Professional's Firm provides to Clients.

        ii. **Fee-Based.** CFP Board uses the term "fee and commission" to describe the compensation method of those who receive both fees and Sales-Related Compensation. A CFP® professional who represents that his or her or the CFP® Professional's Firm's compensation method is "fee-based" or any other similar term that is not fee-only:

            a) May not use the term in a manner that suggests the CFP® professional or the CFP® Professional's Firm is fee-only; and

            b) Must clearly state that either the CFP® professional or the CFP® Professional's Firm earns fees and commissions, or that the CFP® professional or the CFP® Professional's Firm are not fee-only.

    b. **Sales-Related Compensation.** Sales-Related Compensation is more than a *de minimis* economic benefit, including any bonus or portion of compensation, resulting from a Client purchasing or selling Financial Assets, from a Client holding Financial Assets for purposes other than receiving Financial Advice, or from the referral of a Client to any person or entity other than the CFP® Professional's Firm. Sales-Related Compensation includes, for example, commissions, trailing commissions, 12b-1 fees, spreads, transaction fees, revenue sharing, referral or solicitor fees, or similar consideration. Sales-Related Compensation does not include:

        i. Soft dollars (any research or other benefits received in connection with Client brokerage that qualifies for the "safe harbor" of Section 28(e) of the Securities Exchange Act of 1934);

        ii. Reasonable and customary fees for custodial or similar administrative services if the fee or amount of the fee is not determined based on the amount or value of Client transactions;

        iii. Non-monetary benefits provided by another service provider, including a custodian, that benefit the CFP® professional's Clients by improving the CFP® professional's delivery of Professional Services, and that are not determined based on the amount or value of Client transactions;

        iv. Reasonable and customary fees for Professional Services, other than for solicitations and referrals, the CFP® professional or CFP® Professional's Firm provides to a Client that are collected and distributed by another service provider, including under a Turnkey Asset Management Platform; or

        v. A fee the Related Party solicitor receives for soliciting clients for the CFP® professional or the CFP® Professional's Firm.

    c. **Related Party.** A person or business entity (including a trust) whose receipt of Sales-Related Compensation a reasonable CFP® professional would view as directly or indirectly benefiting the CFP® professional or the CFP® Professional's Firm, including, for example, as a result of the CFP® professional's ownership stake in the business entity. There is a rebuttable presumption that a Related Party includes:

        i. Family Members. A member of the CFP® professional's Family and any business entity that the Family or members of the Family Control; and

        ii. Business Entities. A business entity that the CFP® professional or the CFP® Professional's Firm Controls, or that is Controlled by or is under common Control with, the CFP® Professional's Firm.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

d. **In Connection with any Professional Services.** Sales-Related Compensation received by a Related Party is "in connection with any Professional Services" if it results, directly or indirectly, from Client transactions referred or facilitated by the CFP® professional or the CFP® Professional's Firm.

e. **Safe Harbor for Related Parties.** Sales-Related Compensation received by a Related Party is not "in connection with any Professional Services" if the CFP® professional or the CFP® Professional's Firm adopts and implements policies and procedures reasonably designed to prevent the CFP® professional or the CFP® Professional's Firm from recommending that any Client purchase Financial Assets from or through, or refer any Clients to, the Related Party.

f. **Misrepresentations by a CFP® Professional's Firm.** A CFP® professional who Controls the CFP® Professional's Firm may not allow the CFP® Professional's Firm to make a representation of compensation method that would be false or misleading if made by the CFP® professional. A CFP® professional who does not Control the CFP® Professional's Firm must correct a CFP® Professional's Firm's misrepresentations of compensation method by accurately representing the CFP® professional's compensation method to the CFP® professional's Clients.

13. **DUTIES WHEN RECOMMENDING, ENGAGING, AND WORKING WITH ADDITIONAL PERSONS**

a. When engaging or recommending the selection or retention of additional persons to provide financial or Professional Services for a Client, a CFP® professional must:

   i. Have a reasonable basis for the recommendation or Engagement based on the person's reputation, experience, and qualifications;

   ii. Disclose to the Client, at the time of the recommendation or prior to the Engagement, any arrangement by which someone who is not the Client will compensate or provide some other material economic benefit to the CFP® professional, the CFP® Professional's Firm, or a Related Party for the recommendation or Engagement; and

   iii. When engaging a person to provide services for a Client, exercise reasonable care to protect the Client's interests.

b. When working with another financial or Professional Services provider on behalf of a Client, a CFP® professional must:

   i. Communicate with the other provider about the scope of their respective services and the allocation of responsibility between them; and

   ii. Inform the Client in a timely manner if the CFP® professional has a reasonable belief that the other provider's services were not performed in accordance with the scope of services to be provided and the allocation of responsibilities.

14. **DUTIES WHEN SELECTING, USING, AND RECOMMENDING TECHNOLOGY**

a. A CFP® professional must exercise reasonable care and judgment when selecting, using, or recommending any software, digital advice tool, or other technology while providing Professional Services to a Client.

b. A CFP® professional must have a reasonable level of understanding of the assumptions and outcomes of the technology employed.

c. A CFP® professional must have a reasonable basis for believing that the technology produces reliable, objective, and appropriate outcomes.

15. **REFRAIN FROM BORROWING OR LENDING MONEY AND COMMINGLING FINANCIAL ASSETS**

a. A CFP® professional may not, directly or indirectly, borrow money from or lend money to a Client unless:

   i. The Client is a member of the CFP® professional's Family; or

   ii. The lender is a business organization or legal entity in the business of lending money.

b. A CFP® professional may not commingle a Client's Financial Assets with the Financial Assets of the CFP® professional or the CFP® Professional's Firm.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

**B. FINANCIAL PLANNING AND APPLICATION OF THE PRACTICE STANDARDS FOR THE FINANCIAL PLANNING PROCESS**

1. **Financial Planning Definition.** Financial Planning is a collaborative process that helps maximize a Client's potential for meeting life goals through Financial Advice that integrates relevant elements of the Client's personal and financial circumstances.

2. **Examples of Relevant Elements of the Client's Personal and Financial Circumstances.** Relevant elements of personal and financial circumstances vary from Client to Client, and may include the Client's need for or desire to: develop goals, manage assets and liabilities, manage cash flow, identify and manage risks, identify and manage the financial effect of health considerations, provide for educational needs, achieve financial security, preserve or increase wealth, identify tax considerations, prepare for retirement, pursue philanthropic interests, and address estate and legacy matters.

3. **Application of Practice Standards.** The Practice Standards set forth the Financial Planning Process. A CFP® professional must comply with the Practice Standards when:

    a. The CFP® professional agrees to provide or provides:

        i. Financial Planning; or

        ii. Financial Advice that requires integration of relevant elements of the Client's personal and/or financial circumstances in order to act in the Client's best interests ("Financial Advice that Requires Financial Planning"); or

    b. The Client has a reasonable basis to believe the CFP® professional will provide or has provided Financial Planning.

4. **Integration Factors.** Among the factors that CFP Board will weigh in determining whether a CFP® professional has agreed to provide or provided Financial Advice that Requires Financial Planning are:

    a. The number of relevant elements of the Client's personal and financial circumstances that the Financial Advice may affect;

    b. The portion and amount of the Client's Financial Assets that the Financial Advice may affect;

    c. The length of time the Client's personal and financial circumstances may be affected by the Financial Advice;

    d. The effect on the Client's overall exposure to risk if the Client implements the Financial Advice; and

    e. The barriers to modifying the actions taken to implement the Financial Advice.

5. **CFP Board Evaluation.** In a disciplinary proceeding in which a CFP® professional denies CFP Board's allegation that the CFP® professional was required to comply with the Practice Standards, the CFP® professional must demonstrate that compliance with the Practice Standards was not required.

6. **No Client Agreement to Engage for Financial Planning.** If a CFP® professional otherwise must comply with the Practice Standards, but the Client does not agree to engage the CFP® professional to provide Financial Planning, the CFP® professional must either:

    a. Not enter into the Engagement;

    b. Limit the Scope of Engagement to services that do not require application of the Practice Standards, and describe to the Client the services the Client requests that the CFP® professional will not be performing;

    c. Provide the requested services after informing the Client how Financial Planning would benefit the Client and how the decision not to engage the CFP® professional to provide Financial Planning may limit the CFP® professional's Financial Advice, in which case the CFP® professional is not required to comply with the Practice Standards; or

    d. Terminate the Engagement.

## C. PRACTICE STANDARDS FOR THE FINANCIAL PLANNING PROCESS

In complying with the Practice Standards, a CFP® professional must act prudently in documenting information, as the facts and circumstances require, taking into account the significance of the information, the need to preserve the information in writing, the obligation to act in the Client's best interests, and the CFP® Professional's Firm's policies and procedures.

1. **Understanding the Client's Personal and Financial Circumstances**

   a. **Obtaining Qualitative and Quantitative Information.** A CFP® professional must describe to the Client the qualitative and quantitative information concerning the Client's personal and financial circumstances needed to fulfill the Scope of Engagement and collaborate with the Client to obtain the information.

      i. Examples of qualitative or subjective information include the Client's health, life expectancy, family circumstances, values, attitudes, expectations, earnings potential, risk tolerance, goals, needs, priorities, and current course of action.

      ii. Examples of quantitative or objective information include the Client's age, dependents, other professional advisors, income, expenses, cash flow, savings, assets, liabilities, available resources, liquidity, taxes, employee benefits, government benefits, insurance coverage, estate plans, education and retirement accounts and benefits, and capacity for risk.

   b. **Analyzing Information.** A CFP® professional must analyze the qualitative and quantitative information to assess the Client's personal and financial circumstances.

   c. **Addressing Incomplete Information.** If unable to obtain information necessary to fulfill the Scope of Engagement, the CFP® professional must either limit the Scope of Engagement to those services the CFP® professional is able to provide or terminate the Engagement.

2. **Identifying and Selecting Goals**

   a. **Identifying Potential Goals.** A CFP® professional must discuss with the Client the CFP® professional's assessment of the Client's financial and personal circumstances, and help the Client identify goals, noting the effect that selecting a particular goal may have on other goals. In helping the Client identify goals, the CFP® professional must discuss with the Client, and apply, reasonable assumptions and estimates. These may include life expectancy, inflation rates, tax rates, investment returns, and other Material assumptions and estimates.

   b. **Selecting and Prioritizing Goals.** A CFP® professional must help the Client select and prioritize goals. The CFP® professional must discuss with the Client any goals the Client has selected that the CFP® professional believes are not realistic.

3. **Analyzing the Client's Current Course of Action and Potential Alternative Course(s) of Action**

   a. **Analyzing Current Course of Action.** A CFP® professional must analyze the Client's current course of action, including the material advantages and disadvantages of the current course and whether the current course maximizes the potential for meeting the Client's goals.

   b. **Analyzing Potential Alternative Courses of Action.** Where appropriate, a CFP® professional must consider and analyze one or more potential alternative courses of action, including the material advantages and disadvantages of each alternative, whether each alternative helps maximize the potential for meeting the Client's goals, and how each alternative integrates the relevant elements of the Client's personal and financial circumstances.

4. **Developing the Financial Planning Recommendation(s)**

   From the potential courses of action, a CFP® professional must select one or more recommendations designed to maximize the potential for meeting the Client's goals. The recommendation may be to continue the Client's current course of action. For each recommendation selected, the CFP® professional must consider the following information:

   a. The assumptions and estimates used to develop the recommendation;

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

b.  The basis for making the recommendation, including how the recommendation is designed to maximize the potential to meet the Client's goals, the anticipated material effects of the recommendation on the Client's financial and personal circumstances, and how the recommendation integrates relevant elements of the Client's personal and financial circumstances;

c.  The timing and priority of the recommendation; and

d.  Whether the recommendation is independent or must be implemented with another recommendation.

5. **Presenting the Financial Planning Recommendation(s)**

A CFP® professional must present to the Client the selected recommendations and the information that was required to be considered when developing the recommendation(s).

6. **Implementing the Financial Planning Recommendation(s)**

a.  **Addressing Implementation Responsibilities.** A CFP® professional must establish with the Client whether the CFP® professional has implementation responsibilities. When the CFP® professional has implementation responsibilities, the CFP® professional must communicate to the Client the recommendation(s) being implemented and the responsibilities of the CFP® professional, the Client, and any third party with respect to implementation.

b.  **Identifying, Analyzing, and Selecting Actions, Products, and Services.** A CFP® professional who has implementation responsibilities must identify and analyze actions, products, and services designed to implement the recommendations. The CFP® professional must consider the basis for each selection, which must include:

   i.  How the action, product, or service is designed to implement the CFP® professional's recommendation; and

   ii.  The advantages and disadvantages of the action, product, or service relative to reasonably available alternatives.

c.  **Recommending Actions, Products, and Services for Implementation.** A CFP® professional who has implementation responsibilities must recommend one or more actions, products and services to the Client. The CFP® professional must discuss with the Client the basis for selecting an action, product, or service, the timing and priority of implementing the action, product, or service, and disclose and manage any Material Conflicts of Interest concerning the action, product, or service.

d.  **Selecting and Implementing Actions, Products, or Services.** A CFP® professional who has implementation responsibilities must help the Client select and implement the actions, products, or services. The CFP® professional must discuss with the Client any Client selection that deviates from the actions, products, and services the CFP® professional recommended.

7. **Monitoring Progress and Updating**

a.  **Monitoring and Updating Responsibilities.** A CFP® professional must establish with the Client whether the CFP® professional has monitoring and updating responsibilities. When the CFP® professional has responsibilities for monitoring and updating, the CFP® professional must communicate to the Client:

   i.  Which actions, products, and services are and are not subject to the CFP® professional's monitoring responsibility;

   ii.  How and when the CFP® professional will monitor the actions, products, and services;

   iii.  The Client's responsibility to inform the CFP® professional of any Material changes to the Client's qualitative and quantitative information;

   iv.  The CFP® professional's responsibility to update the Financial Planning recommendations; and

   v.  How and when the CFP® professional will update the Financial Planning recommendations.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

b. **Monitoring the Client's Progress.** A CFP® professional who has monitoring responsibilities must analyze, at appropriate intervals, the progress toward achieving the Client's goals. The CFP® professional must review with the Client the results of the CFP® professional's analysis.

c. **Obtaining Current Qualitative and Quantitative Information.** A CFP® professional who has monitoring responsibility must collaborate with the Client in an attempt to obtain current qualitative and quantitative information concerning the Client's personal and financial circumstances.

d. **Updating Goals, Recommendations, or Implementation Decisions.** Where a CFP® professional has updating responsibility, and circumstances warrant changes to the Client's goals, recommendations, or selections of actions, products or services, the CFP® professional must update as appropriate in accordance with these Practice Standards.

## D. DUTIES OWED TO FIRMS AND SUBORDINATES

1. **Use Reasonable Care When Supervising**

A CFP® professional must exercise reasonable care when supervising persons acting under the CFP® professional's direction, including employees and other persons over whom the CFP® professional has responsibility, with a view toward preventing violations of applicable laws, rules, regulations, and these Standards.

2. **Comply with Lawful Objectives of CFP® Professional's Firm**

A CFP® professional:

a. Will be subject to discipline by CFP Board for violating policies and procedures of the CFP® Professional's Firm that do not conflict with these Standards.

b. Will not be subject to discipline by CFP Board for violating policies and procedures of the CFP® Professional's Firm that conflict with these Standards.

3. **Provide Notice of Public Discipline**

A CFP® professional must promptly advise the CFP® Professional's Firm, in writing, of any public discipline imposed by CFP Board.

## E. DUTIES OWED TO CFP BOARD

1. **Definitions.** The following definitions apply:

a. **Felony.** A felony offense, or for jurisdictions that do not differentiate between a felony and a misdemeanor, an offense punishable by a sentence of at least one-year imprisonment or a fine of at least $1,000.

b. **Relevant Misdemeanor.** A criminal offense, that is not a Felony, for conduct involving fraud, theft, misrepresentation, other dishonest conduct, crimes of moral turpitude, violence, or a second (or more) alcohol and/or drug-related offense.

c. **Regulatory Investigation.** An investigation initiated by a federal, state, local, or foreign governmental agency, self-regulatory organization, or other regulatory authority. A Regulatory Investigation does not include preliminary or routine regulatory inquiries or requests for information, deficiency letters, "blue sheet" requests or other trading questionnaires, or examinations.

d. **Regulatory Action.** An action initiated by a federal, state, local, or foreign governmental agency, self-regulatory organization, or other regulatory authority.

e. **Civil Action.** A lawsuit or arbitration.

f. **Finding.** A finding includes an adverse final action and a consent decree in which the finding is neither admitted nor denied, but does not include a deficiency letter, examination report, memorandum of understanding, or similar informal resolution of a matter.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

g. **Minor Rule Violation.** A violation of a self-regulatory organization rule designated as a minor rule violation under a plan approved by the U.S. Securities and Exchange Commission. A rule violation may be designated as "minor" under a plan if the sanction imposed consists of a fine of $2,500 or less, and if the sanctioned person does not contest the fine.

2. **Refrain from Adverse Conduct.** A CFP® professional may not engage in conduct that reflects adversely on his or her integrity or fitness as a CFP® professional, upon the CFP® marks, or upon the profession. Such conduct includes, but is not limited to, conduct that results in:

   a. A Felony or Relevant Misdemeanor conviction, or admission into a program that defers or withholds the entry of a judgment of conviction for a Felony or Relevant Misdemeanor;

   b. A Finding in a Regulatory Action or a Civil Action that the CFP® professional engaged in fraud, theft, misrepresentation, or other dishonest conduct;

   c. A personal bankruptcy or business bankruptcy filing or adjudication where the CFP® professional was a Control Person of the business, unless the CFP® professional can rebut the presumption that the bankruptcy demonstrates an inability to manage responsibly the CFP® professional's or the business's financial affairs;

   d. A federal tax lien on property owned by the CFP® professional, unless the CFP® professional can rebut the presumption that the federal tax lien demonstrates an inability to manage responsibly the CFP® professional's financial affairs; or

   e. A non-federal tax lien, judgment lien, or civil judgment that has not been satisfied within a reasonable amount of time unless the CFP® professional can rebut the presumption that the non-federal tax lien, judgment lien, or civil judgment demonstrates an inability to manage responsibly the CFP® professional's financial affairs.

3. **Reporting.** A CFP® professional must provide written notice to CFP Board within thirty (30) calendar days after the CFP® professional, or an entity over which the CFP® professional was a Control Person, has:

   a. Been charged with, convicted of, or admitted into a program that defers or withholds the entry of a judgment or conviction for, a Felony or Relevant Misdemeanor;

   b. Been named as a subject of, or whose conduct is mentioned adversely in, a Regulatory Investigation or Regulatory Action alleging failure to comply with the laws, rules, or regulations governing Professional Services;

   c. Had conduct mentioned adversely in a Finding in a Regulatory Action involving failure to comply with the laws, rules, or regulations governing Professional Services (except a Regulatory Action involving a Minor Rule Violation in a Regulatory Action brought by a self-regulatory organization);

   d. Had conduct mentioned adversely in a Civil Action alleging failure to comply with the laws, rules, or regulations governing Professional Services;

   e. Become aware of an adverse arbitration award or civil judgment, or a settlement agreement, in a Civil Action alleging failure to comply with the laws, rules, or regulations governing Professional Services, where the conduct of the CFP® professional, or an entity over which the CFP® professional was a Control Person, was mentioned adversely, other than a settlement for an amount less than $15,000;

   f. Had conduct mentioned adversely in a Civil Action alleging fraud, theft, misrepresentation, or other dishonest conduct;

   g. Been the subject of a Finding of fraud, theft, misrepresentation, or other dishonest conduct in a Regulatory Action or Civil Action;

   h. Become aware of an adverse arbitration award or civil judgment, or a settlement agreement in a Civil Action alleging fraud, theft, misrepresentation, or other dishonest conduct, where the conduct of the CFP® professional, or an entity over which the CFP® professional was a Control Person, was mentioned adversely;

i.  Had a professional license, certification, or membership suspended, revoked, or materially restricted because of a violation of rules or standards of conduct;

j.  Been terminated for cause from employment or permitted to resign in lieu of termination when the cause of the termination or resignation involved allegations of dishonesty, unethical conduct, or compliance failures;

k.  Been named as the subject of, or been identified as the broker/adviser of record in, any written, customer-initiated complaint that alleged the CFP® professional was involved in:

   i.   Forgery, theft, misappropriation, or conversion of Financial Assets;

   ii.  Sales practice violations and contained a claim for compensation of $5,000 or more; or

   iii. Sales practice violations and settled for an amount of $15,000 or more.

l.  Filed for or been the subject of a personal bankruptcy or business bankruptcy where the CFP® professional was a Control Person;

m.  Received notice of a federal tax lien on property owned by the CFP® professional; or

n.  Failed to satisfy a non-federal tax lien, judgment lien, or civil judgment within one year of its date of entry, unless payment arrangements have been agreed upon by all parties.

4. **Provide Narrative Statement.** The written notice must include a narrative statement that accurately and completely describes the Material facts and the outcome or status of the reportable matter.

5. **Cooperation.** A CFP® professional may not make false or misleading representations to CFP Board or obstruct CFP Board in the performance of its duties. A CFP® professional must satisfy the cooperation requirements set forth in CFP Board's *Procedural Rules*, including by cooperating fully with CFP Board's requests, investigations, disciplinary proceedings, and disciplinary decisions.

6. **Compliance with *Terms and Conditions of Certification and Trademark License.*** A CFP® professional must comply with the *Terms and Conditions of Certification and Trademark License*.

## F.  PROHIBITION ON CIRCUMVENTION

A CFP® professional may not do indirectly, or through or by another person or entity, any act or thing that the *Code and Standards* prohibit the CFP® professional from doing directly.

# GLOSSARY

**CFP® Professional's Firm(s).** Any entity on behalf of which a CFP® professional provides Professional Services to a Client, and that has the authority to exercise control over the CFP® professional's activities, including the CFP® professional's employer, broker-dealer, registered investment adviser, insurance company, and insurance agency.

**Client.** Any person, including a natural person, business organization, or legal entity, to whom the CFP® professional provides or agrees to provide Professional Services pursuant to an Engagement.

**Conflict of Interest.**

a.  When a CFP® professional's interests (including the interests of the CFP® Professional's Firm) are adverse to the CFP® professional's duties to a Client, or

b.  When a CFP® professional has duties to one Client that are adverse to another Client.

**Control.** The power, directly or indirectly, to direct the management or policies of the entity at the relevant time, through ownership, by contract, or otherwise.

**Control Person.** A person who has Control.

**Engagement.** An oral or written agreement, arrangement, or understanding.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

**Family.** Grandparent, parent, stepparent, father-in-law/mother-in-law, uncle/aunt, spouse, former spouse, spousal equivalent, domestic partner, brother/sister, stepsibling, brother-in-law/sister-in-law, cousin, son/daughter, stepchild, son-in-law/daughter-in law, nephew/niece, grandchild, and any other person the CFP® professional, directly or indirectly, supports financially to a material extent.

**Financial Advice.**

a. A communication that, based on its content, context, and presentation, would reasonably be viewed as a recommendation that the Client take or refrain from taking a particular course of action with respect to:

   i. The development or implementation of a financial plan;

   ii. The value of or the advisability of investing in, purchasing, holding, gifting, or selling Financial Assets;

   iii. Investment policies or strategies, portfolio composition, the management of Financial Assets, or other financial matters; or

   iv. The selection and retention of other persons to provide financial or Professional Services to the Client; or

b. The exercise of discretionary authority over the Financial Assets of a Client.

The determination of whether Financial Advice has been provided is an objective rather than subjective inquiry. The more individually tailored the communication is to the Client, the more likely the communication will be viewed as Financial Advice. The provision of services or the furnishing or making available of marketing materials, general financial education materials, or general financial communications that a reasonable CFP® professional would not view as Financial Advice, does not constitute Financial Advice.

**Financial Assets.** Securities, insurance products, real estate, bank instruments, commodities contracts, derivative contracts, collectibles, or other financial products.

**Financial Planning.** A collaborative process that helps maximize a Client's potential for meeting life goals through Financial Advice that integrates relevant elements of the Client's personal and financial circumstances.

**Material.** Information is material when a reasonable Client or prospective Client would consider the information important in making a decision.

**Professional Services.** Financial Advice and related activities and services that are offered or provided, including, but not limited to, Financial Planning, legal, accounting, or business planning services.

**Related Party.** A person or business entity (including a trust) whose receipt of Sales-Related Compensation a reasonable CFP® professional would view as benefiting the CFP® professional or the CFP® Professional's Firm, including, for example, as a result of the CFP® professional's ownership stake in the business entity. There is a rebuttable presumption that a Related Party includes:

a. **Family Members.** A member of the CFP® professional's Family and any business entity that the Family or members of the Family Control; and

b. **Business Entities.** A business entity that the CFP® professional or the CFP® Professional's Firm Controls, or that is Controlled by or is under common Control with, the CFP® Professional's Firm.

**Scope of Engagement.** The Professional Services to be provided pursuant to an Engagement.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878



**CERTIFIED FINANCIAL PLANNER BOARD OF STANDARDS, INC.**

1425 K St NW #800 Washington, DC 20005

800.487.1497  |  f 202.379.2299  |  mail@CFPBoard.org  |  CFP.net

©2018 Certified Financial Planner Board of Standards, Inc. All rights reserved.

# EXHIBIT 9

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878



**Ioannis (Ian) G. Conits**
A member of the South Carolina Bar
IConits@GWBlawfirm.com

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

July 18, 2025

<u>**VIA E-MAIL AND CERTIFIED U.S. MAIL**</u>

Northwestern Mutual Wealth Management
Company®
Attention: John Mitchell
1201 Edwards Mill Road, Suite 200
Raleigh, NC 27607
Email: john.mitchell@nm.com-4797

Northwestern Long Term Care Insurance
Company
Attention: John Mitchell
1201 Edwards Mill Road, Suite 200
Raleigh, NC 27607
Email: john.mitchell@nm.com-4797

Northwestern Mutual Investment Services,
LLC
Attention: John Mitchell
1201 Edwards Mill Road, Suite 200
Raleigh, NC 27607
Email: john.mitchell@nm.com-4797

John Mitchell
1201 Edwards Mill Road, Suite 200
Raleigh, NC 27607
Email: john.mitchell@nm.com-4797

Re:    **Northwestern Policy Nos. ███6513, ███0411, and ███2255**

Dear Mr. Mitchell:

This law firm represents Robark Properties, LLC ("Robark"). This letter concerns Robark's three life insurance policies bearing Policy Numbers ███6513, ███0411, and ███2255 (collectively, the "Policies"). To begin, we understand the following:

(1) You are affiliated with Northwestern Mutual Wealth Management Company®, Northwestern Mutual Investment Services, LLC and Northwestern Long Term Care Insurance Company (collectively, the "Companies").

(2) The Companies are subsidiaries of Northwestern Mutual Life Insurance Company ("Northwestern Mutual").

(3) The marketing name you and the Companies use to do business is Heirloom Advisors.[1]

(4) Heirloom Advisors is Robark's financial advisor.

---

[1] The aforementioned subsidiaries of Northwestern Mutual and yourself are collectively referred to herein as "Heirloom Advisors."

55 Beattie Place, Suite 1200 | P.O. Box 10589 (29603) | Greenville, SC 29601 | 864.271.9580 | Fax: 864.271.7502 | www.GWBlawfirm.com

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

Mr. Mitchell
July 18, 2025
Page 2

For brief background, despite repeated requests, Northwestern Mutual has refused to produce certain documents, communications and/or information to Robark concerning the Policies. Robark had to file a lawsuit in South Carolina against Northwestern Mutual just to obtain a copy of what Northwestern Mutual refers to as "policy replicas."

Prior to filing the aforementioned lawsuit in South Carolina against Northwestern Mutual, Christine Cowles, who has represented herself to be legal counsel for Northwestern Mutual, requested that Robark's managing member, Ralph Falls, "direct any future correspondence to [her regarding the production of documents, communications and/or information to Robark concerning the Policies]."

Robark sent Ms. Cowles the letter attached hereto as **Exhibit A**. Ms. Cowles responded on behalf of Northwestern Mutual and refused to provide anything that was requested, including a copy of what Northwestern Mutual refers to as "policy replicas." (*See* **Exhibit B** attached hereto). Given Ms. Cowles' correspondence, Robark initiated a lawsuit in South Carolina against Northwestern Mutual. A copy of the operative pleading in that case is attached hereto as **Exhibit C**.

Northwestern Mutual recently obtained summary judgment in the South Carolina case.[2] In obtaining summary judgment against Robark and in spite of Ms. Cowles' prior representation (as counsel for Northwestern Mutual) that any Robark correspondence concerning the Policies should be directed to her, Northwestern Mutual represented to the South Carolina court:

> [Robark] provides no evidence that a life insurance entity has a fiduciary relationship with the policy holder. Instead, [Robark] pulled a screenshot of a separate webpage for a separate subsidiary's securities line of business. Which has nothing to do with the life insurance line of business. The securities business and the life insurance business operate in completely different arenas. While the securities business may have fiduciary relationships, in the life insurance arena there is no fiduciary relationship. So even assuming, *in arguendo*, that [Robark] did have a fiduciary relationship with a financial advisor, that advisor is still affiliated as an independent contractor of a subsidiary corporation. That securities business arrangement does not impute any special duties to the life insurance company line of business.

(*See* **Exhibit D**, p. 9 attached hereto). The gamesmanship is clear. On the one hand, Ms. Cowles (as counsel for Northwestern Mutual) asked for any Robark correspondence concerning the Policies to be directed to her. In Court, however, Northwestern Mutual pointed the finger at a "screenshot of a separate webpage for a separate subsidiary's securities line of business":

---

[2] Robark has filed an appeal, which is pending.

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

Mr. Mitchell
July 18, 2025
Page 3



As a CFP®, you are to follow the Code of Ethics and Standards of Conduct attached hereto as **Exhibit E**. As Robark's financial advisor, Heirloom Advisors owes a fiduciary duty to Robark. (Ex. E, p. 3). Such duty includes a duty of loyalty and duty of care, as well as a duty "to follow [Robark's] instructions." (*Id.*).

Robark hereby instructs Heirloom Advisors to produce the following documents,[3] communications[4] and information by **no later than Friday, July 25, 2025 at 5:00 p.m.**:

---

[3] "Document" or "documents" include[s], but is not limited to, the following: records; notes; summaries; schedules, calendars or planners contracts; agreements; invoices; orders; acknowledgements; diaries; reports; forecasts; appraisals; memoranda of telephone or in-person conversations by or with any person; any other memoranda, letters; telegrams; telexes; telefacsimiles; text messages; IMessages; electronic mail (e-mail); any other electronic messages; electronic bulletin boards and/or intranet or internet web sites of posits; any other communications prepared, drafted, received, or sent; tapes; transcripts; recordings; photographs; pictures; films; computer programs or data; or other graphic, symbolic, recorded, or written materials of any nature whatsoever. Any document that contains any comment, notation, addition, insertion, or marking of any kind which is not part of another document is to be considered a separate document.

[4] "Communication" or "communications" mean[s] any transmission, conveyance, or exchange of information, whether by written, oral, or other means, including, but not limited to, telephone calls, emails, text messages, internal messaging applications, oral conversations, and social media messages/posts. To the extent any response to the requests herein references an oral communication, please describe such communication in detail, including, the individuals who

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

Mr. Mitchell
July 18, 2025
Page 4

1. A copy of each of the Policies. To the extent copies of the Policies are not maintained by you, please explain why.

2. All documents, communications and/or information related to Robark and/or the Policies from 2013 through present. This request specifically, includes, but is not limited to, all communications between any representative, agent or employee of Heirloom Advisors and the following:

   a. Christine Cowles
   b. Northwestern Mutual and/or any attorney, agent, employee or other person acting on behalf of Northwestern Mutual
   c. John Bode and/or any attorney, agent, employee or other person acting on behalf of John Bode;
   d. Coleen Miller;
   e. Walter E. Brock, Jr. Brock and/or any other attorney, representative, or employee of Young Moore and Henderson, P.A.;
   f. Brodie Burwell and/or any other attorney, representative, or employee of Envisage Law (formerly known as Pinna Johnston & Burwell);
   g. John Mitchell;
   h. David Woody;
   i. Any other representative, agent, or employee of Heirloom Advisors;
   j. Any representative, agent or employee of the "Condrey Network" through 2021 (email addresses include, but are not limited to, mike.condrey@nm.com);
   k. Any representative, agent or employee of the "Berry Network" from 2021 through present (email addresses include, but are not limited to, berry@nm.com);
   l. Any representative, agent or employee of Norton Collar Lund Lilley, PLLC;
   m. Any representative, agent or employee of Barham Guy Frelier, P.A.;
   n. Dianne Sellers; and
   o. Any representative, agent or employee of Fidelity Investments, including, but not limited to, Carrie Slaughter, Doug Clements and/or Kathy Sommer (formerly Segodnia).

3. To the extent not requested by Request No. 2, all communications sent to a representative, agent or employee of Heirloom Advisors related in any way to Robark or the Policies.

4. To the extent not requested by Request No. 2, all communications sent by a representative, agent or employee of Heirloom Advisors related in any way to Robark or the Policies.

---

were parties to the communication, the date of the communication and the substance of the communication.

Mr. Mitchell
July 18, 2025
Page 5

5. To the extent not requested by Request No. 2, all communications sent to John Mitchell related in any way to Robark or the Policies.

6. To the extent not requested by Request No. 2, all communications sent by John Mitchell related in any way to Robark or the Policies.

7. To the extent not requested by Request No. 2, all communications between John Mitchell and Christine Cowles related in any way to Robark or the Policies.

8. To the extent not requested by Request No. 2, all of Heirloom Advisors' internal communications related in any way to Robark or the Policies.

9. To the extent not requested by Request No. 2, all documents and communications concerning any compensation and/or commissions received by any individual, entity and/or financial representative associated with the Policies, including, but not limited to, John Mitchell, David Woody, and/or Heirloom Advisors.

10. To the extent not requested by Request No. 2, all documents and communications regarding management of the Policies by John Mitchell and/or David Woody from 2013 through present. This includes, but is not limited to, all documents and communications concerning any changes of any personnel assigned to or associated with the Policies.

11. All communications related to the ISA closure and all information regarding who directed the ISA to be closed, when the directive to close the ISA was communicated, and who effectuated the closure.

12. All documents and communications related to use of Quik Pay Plus (QPP) for the Policies.

13. To the extent not provided in response to the above requests, please provide a complete explanation of what involvement, if any, David Woody has had with the Policies since 2013.

14. To the extent not provided in response to the above requests, please produce Heirloom Advisors' complete file for the Policies from 2013 through present, including, but not limited to, all documents and communications concerning the Policies.

If the requested documents, communications and information are not received by the aforementioned deadline, Robark will take all action necessary against Heirloom Advisors to obtain what has been requested. Such action may include, but is not limited to, filing a lawsuit in a court of proper jurisdiction. We hope such action will not be necessary.

Mr. Mitchell
July 18, 2025
Page 6

Please ensure all necessary steps are taken by Heirloom Advisors to prevent the destruction, loss, concealment, or alteration of any documents or communications in Heirloom Advisors' possession, custody, or control that relate in any way to the Policies.

Sincerely,

GALLIVAN, WHITE & BOYD, P.A.

Ioannis (Ian) G. Conits
Direct Dial: 864-271-5432

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

# EXHIBIT 10

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

 **NELSON MULLINS**

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
ATTORNEYS AND COUNSELORS AT LAW
1320 Main Street
17th Floor
Columbia, SC 29201
T: (803) 799-2000   F: (803) 256-7500
**nelsonmullins.com**

D. Larry Kristinik
Attorney
T: (803) 255-9531
larry.kristinik@nelsonmullins.com

August 7, 2025

**VIA EMAIL**

Ioannis (Ian) G. Conits, Esquire
GALLIVAN, WHITE & BOYD, PA
P.O. Box 10589
Greenville, SC 29603
icontis@gwblawfirm.com

RE:    Robark Properties Document Request
       Policy Nos. ██████6513, ██████0411, and ██████2255
       Our File No. 035011.01526

Dear Ian:

This letter responds to your July 18, 2025 correspondence addressed to John Mitchell and multiple Northwestern Mutual entities, including Northwestern Mutual Wealth Management Company, Northwestern Mutual Investment Services, LLC, and Northwestern Long Term Care Insurance Company (collectively, the "Northwestern Mutual entities"). Your letter requests the production of certain documents, communications, and information related to the above-referenced policies issued to Robark Properties, LLC ("Robark"). We represent Mr. Mitchell and the Northwestern Mutual entities and have been asked to respond to your letter. Pursuant to your July 25th email, you have given our clients until August 8th to respond.

Robark commenced a lawsuit in South Carolina against Northwestern Mutual Life Insurance Company ("NMLIC") seeking the same documents requested in your letter. The Court dismissed the lawsuit by an Order entered March 7, 2025 finding no basis for Robark's claim that it was entitled to the documents. There was no legal right under the insurance policies, statutes, regulations, or the common law entitling Robark to receive communications or other documents not typically provided to policy owners under NMLIC's standard practices. Similarly, Robark has no right to obtain from John Mitchell or the Northwestern Mutual entities what it has not already received from NMLIC. Notably, there is no ongoing litigation for which the requested documents may be relevant. Your request is not in the form of a subpoena, but is a request based solely on Robark's assertion that Mr. Mitchell was Robark's "financial advisor."

Robark has already been provided the documents to which it may be entitled. Before and during the South Carolina litigation, NMLIC provided Robark with replica copies of the policies, application documents, illustrations, annual policy statements, documents showing policy and dividend changes, documents showing the closure of the insurance service account, and a summary

ELECTRONICALLY FILED - 2026 Feb 10 9:24 AM - GREENVILLE - COMMON PLEAS - CASE#2026CP2300878

Ian G. Conits, Esquire
August 7, 2025
Page 2

of all premiums paid on the policies. These are the documents that NMLIC provides to policy owners as part of its standard practice. The other documents you are requesting fall outside the scope of documents to which a policy owner is entitled. For purposes of brevity, we refer to these documents in this letter as the "Disputed Documents."

The Disputed Documents include internal communications and communications with third parties, compensation and commission information, and other proprietary and confidential business records and information that are the property of the Northwestern Mutual entities and/or NMLIC. Pursuant to company policy, standard practices, and applicable law, these records are not disclosed to customers or third parties without proper legal or regulatory authority.

Records relating to insurance policies and customer relationships, including the Disputed Documents, are owned by the Northwestern Mutual entities and/or NMLIC, not Mr. Mitchell. He is not authorized to produce, distribute, or disclose those records without the permission of the Northwestern Mutual entities or NMLIC. Any implication that Mr. Mitchell can independently provide proprietary records belonging to the Northwestern Mutual entities or NMLIC is incorrect.

Additionally, your letter incorrectly characterizes the fiduciary obligations imposed by the CFP® Code of Ethics and Standards of Conduct. On page 3 of your letter, you state that the financial advisor's fiduciary duty includes the duty "to follow [Robark's] instructions." While the Code does include a general duty to follow client instructions, it is clear under Standard A.1.c. that the duty is limited to "reasonable *and lawful* directions." (emphasis added). As stated above, Mr. Mitchell has no authority (or lawful right) to independently provide to Robark records owned by the Northwestern Mutual entities and/or NMLIC. The fiduciary obligations under the CFP® Code must be interpreted in the context of the relationship between the advisor and the client, and they do not supersede company policy, regulatory limitations, or contractual constraints on access to records and the distribution of records.

For the above reasons, our clients have no legal obligation to comply with your request, and no documents will be produced in response to your letter. If you believe Robark has a specific legal right to any particular document other than what has already been discussed in your letter, please provide us with an explanation for our clients' consideration.

Should you have any questions regarding the positions asserted in this letter, please do not hesitate to contact us to discuss.

Very truly yours,

D. Larry Kristinik

DLK:dlk